TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00600-CV






John Sutphin, Jr., Appellant



v.



Tom Arnold Drilling Contractor, Inc., Appellee








FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY

NO. 4079, HONORABLE KEVIN HENDERSON, JUDGE PRESIDING






 Appellant John Sutphin, Jr. ("Sutphin"), the respondent below, seeks relief from
the final judgment of the Williamson County Court at Law No. 1. In response to a motion by
appellee Tom Arnold Drilling Contractor, Inc. ("Arnold") the Williamson County court issued
an order instructing Sutphin to appear and show cause why he should not be held in contempt of
court ("show cause order"). Sutphin made a special appearance through counsel, challenging the
Williamson County court's jurisdiction on two grounds. First, Sutphin argued that because the
Williamson County court's plenary jurisdiction in the underlying cause had expired, the court
lacked jurisdiction to consider a contempt citation against him. Second, Sutphin maintained that
the Williamson County court lacked personal jurisdiction over him because he was a resident of
Colorado. The Williamson County court issued a final judgment denying Sutphin's special
appearance. Sutphin appeals. We will affirm.

Background


 In July 1997, Arnold, a Texas corporation domiciled in Round Rock, filed suit
against Semco, Inc. ("Semco"), a non-resident Colorado corporation, in Williamson County Court
at Law No. 1. Arnold alleged fraud, breach of contract, and Deceptive Trade Practices Act
violations in Semco's sale of a water well utility truck to Arnold. Semco filed a special
appearance sworn to by Sutphin, who is the president and sole shareholder of the company. 
Subsequently, Semco filed four affidavits, each executed by Sutphin, in support of the special
appearance. Each recited that Sutphin had personal knowledge of the facts recited in the sworn
affidavit. The pleadings and affidavits represented to the Williamson County court that Semco
(1) did not engage in business in Texas; (2) had never engaged in business in Texas; (3) had never
previously conducted sales in Texas; (4) had not committed any act in Texas; and (5) had not
solicited business in Texas. In August 1998, the Williamson County court granted Semco's
special appearance and dismissed Arnold's cause with prejudice. No subsequent motions were
filed, and no appeal was taken from this underlying dismissal.

 In December 1998, Arnold filed a federal diversity action in U.S. District Court
in Denver under the Colorado deceptive trade practices statute. In the course of pre-trial
discovery, Arnold gained access to the contents of a motor vehicle dealer complaint file
maintained by the Colorado Department of Revenue. Documentation in the file indicated that
Semco had engaged in systematic and continuous business dealings in Texas from 1996 through
1998. This documentation directly contradicted the representations Sutphin made under oath in
Semco's special appearance pleadings and affidavits in Texas.

 In June 1999, more than ten months after its Texas suit against Semco had been
dismissed, Arnold filed a motion for an order to show cause why Sutphin should not be held in
contempt of court ("Arnold's motion") in the Williamson County court. Arnold's motion was
supported by the business records of several Texas businesses and alleged that the affidavits
Sutphin made in support of Semco's special appearance were false and perjurious. Arnold
requested that the Williamson County court order Sutphin to appear individually for contempt
proceedings against him. (1)

 The Williamson County court signed the show cause order directing Sutphin to
appear before the court in Georgetown, Texas. Sutphin responded by filing a special appearance
supported by affidavits, maintaining that (1) the Williamson County court's plenary jurisdiction
in the underlying cause had expired and that as a result, the court lacked jurisdiction to consider
a contempt citation against him; and (2) because Sutphin was a resident of Colorado, the
Williamson County court lacked personal jurisdiction over him. On September 17, 1999, the
court signed the final judgment overruling Sutphin's special appearance. Sutphin filed a notice
of appeal, which stayed further proceedings against him pending the outcome of this appeal. At
Arnold's request, the Williamson County court made findings of fact and conclusions of law.

 For the limited purpose of determining whether it had jurisdiction to investigate
allegations of fraud and perjury, the Williamson County court considered the allegations in
Arnold's motion as well as the business records filed with the motion. In its findings, the court
stated that it had been influenced by the content of Sutphin's affidavits in granting Semco's special
appearance. The court found that Sutphin signed and swore to the truth of the facts contained in
the affidavits in his individual capacity and based on his personal knowledge. The court
concluded that filing a false, sworn statement for the purpose of influencing a decision of the court
constitutes a fraud upon the court. Finally, the Williamson County court determined that a foreign
resident who swears under oath to the truth of pleadings and affidavits which the affiant knows,
or has reason to know, will be filed and considered by a Texas court is answerable to that court
if the pleadings or affidavits are thereafter shown to be false.


Discussion


A. The Show Cause Order

 When the Williamson County court issued the show cause order, its plenary
jurisdiction in Arnold's underlying suit against Semco had long since expired. The question
remains whether the Williamson County court possessed the inherent power to investigate an
alleged fraud on the court that, if proven, caused the court to relinquish rightful jurisdiction over
Semco in the underlying suit.


 1. Plenary Power

 Sutphin argues that the Williamson County court lacked the authority to issue the
show cause order compelling him to appear because it lacked jurisdiction to enter any orders in
Arnold's suit against Semco. In support of this argument, Sutphin relies on rule 329b(d) of the
Texas Rules of Civil Procedure and a line of cases that stand for the proposition that once a trial
court's plenary jurisdiction over a cause of action has expired, it lacks the power to enter any
further orders in the cause. See Tex R. Civ. P. 329b(d); Ex parte Olivares, 662 S.W.2d 594, 595
(Tex. 1983); State ex rel. Latty v. Owens, 907 S.W.2d 484, 486 (Tex. 1995); First Alief Bank v.
White, 682 S.W.2d 251, 252 (Tex. 1984). More specifically, Sutphin cites authority implying
that once a trial court's plenary jurisdiction expires, the trial court even lacks the jurisdiction to
impose sanctions for a party's pre-judgment conduct. See In re Bennett, 960 S.W.2d 35, 38 (Tex.
1997); cert. denied sub nom. In re Hilliard, 525 U.S. 823 (1998). Sutphin urges that the fact that
the allegations concern allegedly false affidavits, rather than discovery abuse, is of no
consequence. Sutphin claims that if we were to hold otherwise, parties could circumvent the
finality of any judgment, even after appeal, by merely alleging that the prevailing party had given
false and misleading testimony prior to judgment.

 Sutphin argues that rule 329b of the Texas Rules of Civil Procedure limits Texas
trial courts to thirty days to take any action in a cause, or against parties and counsel, other than
to set aside a void judgment. Rule 329b states in pertinent part:


The following rules shall be applicable to motions for new trial and motions to
modify, correct, or reform judgments (other than motions to correct the record
under Rule 316) in all district and county courts:


. . . .


(d) The trial court, regardless of whether an appeal has been perfected, has
plenary power to grant a new trial or to vacate, modify, correct, or reform the
judgment within thirty days after the judgment is signed.



Tex. R. Civ. P. 329b(d). 

 In deciding whether this rule precludes the Williamson County court's exercise of
jurisdiction in this cause, we first consider what Sutphin cites as his strongest authorities in
support of his argument, In re Bennett and Ex parte Olivares. In Bennett, the Texas Supreme
Court considered whether a party's filing of nonsuit or the subsequent removal to federal court
deprived a state trial court of jurisdiction to consider, sua sponte, whether sanctions should be
imposed on attorneys for their pre-removal conduct. See Bennett, 960 S.W.2d at 36. After
plaintiffs filed a nonsuit and defendants removed the cause to federal court, Judge Max Bennett
ordered sanctions against plaintiffs' attorneys, who knowingly and intentionally violated local
rules providing for random assignment of cases to the eight district courts in Nueces County. (2) 
Judge Bennett sought and was granted mandamus relief by the Texas Supreme Court after the
court of appeals directed him to sign the order of nonsuit and vacate the order for sanctions. 
Sutphin relies on the supreme court's statement that "[i]t is only after plenary jurisdiction has
expired that a trial court may not sanction counsel for pre-judgment conduct." Id. at 38. Sutphin
argues that the supreme court's mandate is clear: as a jurisdictional prerequisite, the trial court
must possess plenary jurisdiction, or it lacks authority to take any action whatsoever against
parties or counsel. Initially, this argument seems persuasive. The supreme court has certainly
implied that the power to sanction pre-judgment conduct depends on whether plenary power has
expired. See Scott & White Mem'l Hosp. v. Schexnider, 940 S.W.2d 594, 596 n.2 (Tex. 1996). 
However, Sutphin overlooks the holding of Bennett, which is "that neither the filing of a nonsuit
nor the subsequent removal of a case to federal court deprived the state court of jurisdiction to
consider, sua sponte, whether sanctions should be imposed on attorneys for pre-removal conduct
when the sanctions are unrelated to the merits of the removed case." Bennett, 960 S.W.2d at 36. 
We find it significant that although the case had been removed to federal court, which deprived
Judge Bennett of jurisdiction entirely, the supreme court held that Judge Bennett retained the
power to sanction the attorneys involved in the scheme to select a specific Nueces County district
court.

 Sutphin also relies on Olivares, in which the issue was whether the trial court had
jurisdiction to render a judgment thirteen months after it had dismissed the cause. The Texas
Supreme Court found that dismissal of the cause had fixed the rights of the parties and could only
be set aside by a written order rendered during the period of plenary jurisdiction. See Olivares,
662 S.W.2d at 595 (citing Tex. R. Civ. P. 329b). The subsequent judgment for the plaintiff and 
contempt order against the defendant were nullities See id. (3)

 Sutphin correctly asserts that under rule 329b(d) and the authorities cited, the
Williamson County court lacked jurisdiction to enter orders regarding the merits of Arnold's
underlying suit against Semco. Any attempt by the Williamson County court to reverse the
dismissal, try the cause, or render judgment would appear to be jurisdictionally barred by the
cases upon which Sutphin relies. Sutphin reasons, therefore, that the expiration of plenary power
over the merits of the underlying suit also bars the Williamson County court's exercise of
jurisdiction over Sutphin regarding a possible contempt citation. Sutphin contends that because
his statements were made in the context of the underlying suit, over which the Williamson County
court no longer has jurisdiction, his affidavits are immune from examination by the Williamson
County court.


 2. Inherent Power

 In response, appellee Arnold concedes that the Williamson County court lacked
jurisdiction to enter any orders regarding the merits of the underlying suit against Semco after its
plenary power had expired. However, Arnold contends that the expiration of plenary jurisdiction
has no bearing on the court's authority to investigate an alleged fraud perpetrated on the court
itself. Arnold maintains that the court's inherent power is the source of its authority to issue the
show cause order compelling Sutphin to appear, rather than its plenary jurisdiction to modify its
judgment in the underlying cause.

 Arnold relies on section 21.001 of the Texas Government Code and cases defining
and applying inherent power. See Tex. Gov't Code Ann. § 21.001(a), (b) (West Supp. 2000);
Eichelberger v. Eichelberger, 582 S.W.2d 395, 398 (Tex. 1979); In re E.I. Dupont de Nemours
& Co.--Benlate Litigation, 99 F.3d 363, 367-68 (11th Cir. 1996). More specifically, Arnold cites
authority stating that courts possess the inherent power to punish for contempt. See Ex parte
Pryor, 800 S.W.2d 511, 512 (Tex. 1990); Ex parte Gorena, 595 S.W.2d 841, 843 (Tex. 1979). 
Finally, Arnold maintains that the alleged perjury is such a threat to the dignity, independence,
and integrity of the court that it warrants the exercise of inherent power for the limited purpose
of investigating the allegation. Arnold argues that there is no danger of circumventing the finality
of the judgment in the underlying suit because that judgment is not challenged in this proceeding.

 The Texas Legislature has recognized and codified a court's inherent power in
section 21.001 of the Texas Government Code. The statute states in pertinent part: 


(a) A court has all powers necessary for the exercise of its jurisdiction and the
enforcement of its lawful orders, including authority to issue the writs and
orders necessary or proper in aid of its jurisdiction.


(b) A court shall require that proceedings be conducted with dignity and in an
orderly and expeditious manner and control the proceedings so that justice is
done.



Tex. Gov't Code Ann. § 21.001(a), (b). The Williamson County court specifically cited this
section in its conclusions of law as authority to conduct an independent investigation into Arnold's
allegations.

 In Eichelberger, the Texas Supreme Court explained inherent judicial powers and
stated: 


 The inherent judicial power of a court is not derived from legislative grant
or specific constitutional provision, but from the very fact that the court has been
created and charged by the constitution with certain duties and responsibilities. The
inherent powers of a court are those which it may call upon to aid in the exercise
of its jurisdiction, in the administration of justice, and in the preservation of its
independence and integrity. . . . This power exists to enable our courts to
effectively perform their judicial functions and to protect their dignity,
independence and integrity.



Eichelberger, 582 S.W.2d at 398-99 (internal citations omitted). (4) Arnold argues that to perform
its duty to protect and safeguard the public and to preserve its own "dignity, independence and
integrity," the Williamson County court must possess the inherent power to investigate an alleged
fraud that caused the court to relinquish its jurisdiction. See id. at 399.

 Although federal case law is not binding precedent on this Court in this case,
Arnold cites as persuasive authority In re E.I. DuPont de Nemours & Co.--Benlate Litigation, 99
F.3d at 363. (5) DuPont involved a toxic tort action in which Georgia plaintiffs settled with the
defendants and voluntarily dismissed their claims with prejudice. More than a year and a half
later, the plaintiffs petitioned the United States District Court in Georgia seeking sanctions against
DuPont for its failure to produce certain documents in violation of discovery orders. The district
court conducted a show cause hearing and issued a sanctions order, which DuPont appealed. The
Eleventh Circuit addressed the question whether the district court lacked jurisdiction to conduct
an independent hearing for sanctions based on alleged misconduct in the long-dismissed Georgia
toxic tort litigation. The court stated that every district court has the power to investigate whether
it has been the victim of fraud and to impose a contempt sanction, even after the action in which
the contempt arose has been dismissed. See id. at 367-68 (citing Chambers v. NASCO, Inc., 501
U.S. 32, 44 (1991)). The Eleventh Circuit concluded that in 1995 the district court still possessed
jurisdiction to investigate whether DuPont violated discovery orders in the 1993 litigation. (6) 

 Arnold argues that the Texas Legislature has granted state courts "all powers
necessary for the exercise of [their] jurisdiction . . . including authority to issue the . . . orders
necessary or proper in aid of [their] jurisdiction" and that this grant includes the inherent power
to investigate allegations that fraud deprived the court of jurisdiction. Tex. Gov't Code Ann.
§ 21.001(a) (emphasis added). Arnold asserts that this is a case calling for the exercise of
inherent power because it implicates a direct threat to the integrity of the court. Arnold argues
that the special appearance is a unique proceeding in which the veracity of affidavits is of
paramount importance and that therefore the Williamson County court must possess the authority
to investigate allegations of fraud.


Analysis The question before us is a narrow one: Whether the Williamson County court has
the authority to investigate the truthfulness of the pleadings and affidavits that it relied upon in
deciding to grant a special appearance. There are no Texas cases that speak directly to this
question.

 We begin by noting that Sutphin's cases relying on rule 329b(d) of the Texas Rules
of Civil Procedure are distinguishable. In each, the trial court had disposed of the original cause,
fixing the rights and duties of the parties. See Ex parte Olivares, 662 S.W.2d at 595; First Alief
Bank, 682 S.W.2d at 252; State ex rel. Latty, 907 S.W.2d at 485. The court later revisited the
same case on the merits and attempted to reverse its earlier action by issuing a new judgment that
altered the rights and duties of the parties. (7) In each case, the appellate court cited rule 329b for
the proposition that "the trial court . . . has plenary power to grant a new trial or to vacate,
modify, correct, or reform the judgment within thirty days after the judgment is signed." Tex.
R. Civ. P. 329b(d) (emphasis added).

 In this case, the Williamson County court issued an order that granted Semco's
special appearance and dismissed the underlying cause. That order became final, and the
Williamson County court's plenary jurisdiction expired on September 7, 1998. Arnold has
pursued its underlying claims against Semco in U.S. District Court in Denver. The federal district
court, not the Williamson County court, will determine the rights and duties of the parties on the
merits of Arnold's case against Semco. The Williamson County court has made no attempt to
"vacate, modify, correct, or reform" its order of dismissal. See id. The show cause order does
not change the effect of the initial dismissal or the rights and duties of Semco vis-à-vis Arnold in
any way. Therefore, Sutphin's cases are not dispositive.

 On the other hand, we are persuaded by Arnold's contention that the Williamson
County court possesses the inherent power to investigate the veracity of affidavits that formed the
basis for granting Semco's special appearance and request for dismissal of the underlying cause. 
The special appearance is a unique proceeding in our courts. In a special appearance proceeding,
a defendant asserts that it is not subject to personal jurisdiction in Texas and often appears,
physically, in Texas courts through counsel. Asserting the impropriety and inconvenience of
defending a suit in Texas, the special appearance movant usually supports its argument through
pleadings and sworn affidavits, not live testimony. Witnesses are not usually available for cross-examination, and the court does not observe their demeanor as they take the oath. The court
generally grants or denies the special appearance based on documentary evidence and as a
consequence must, of necessity, be able to rely on the truthfulness of that evidence.

 Here, the Williamson County court expressly found that it relied on Sutphin's
affidavits in granting Semco's special appearance. Without them, the Williamson County court
may have ruled differently. Arnold's motion and supporting documents suggest that Sutphin's
sworn statements were false. (8) It would be an affront to the "dignity, independence and integrity"
of Texas courts if non-resident defendants could escape jurisdiction by presenting false affidavits
and if affiants could execute them without fear of reprisal. See generally Eichelberger, 582
S.W.2d at 399. It is imperative that our courts have the power to investigate the veracity of
affidavits upon which they rely in determining their jurisdiction and in deciding whether to grant
or deny special appearances. The show cause order is the appropriate mechanism for the court
to investigate, and for Sutphin to defend, the veracity of his sworn statements--statements that
allowed his company to avoid suit in a Texas state court.

 We do not decide today whether Sutphin should be held in contempt of court. Nor
do we decide the appropriate remedy if he should be found in contempt. (9) Those questions are not
before us. We merely hold that the Williamson County court has the inherent power to investigate
the veracity of the affidavits Sutphin filed in support of Semco's special appearance and motion
for dismissal.


B. In Personam Jurisdiction

 Sutphin argues that even if the Williamson County court possesses the authority to
investigate the veracity of his affidavits filed in support of Semco's special appearance, the court
lacks personal jurisdiction over Sutphin individually because he is a resident of Colorado. Sutphin
maintains that there is no evidence he has had the minimum contacts required for the Williamson
County court to exercise jurisdiction over him as a non-resident defendant. Furthermore, he
contends that the Williamson County court's investigation will violate traditional notions of fair
play and substantial justice. Finally, Sutphin asserts that he executed each of the four affidavits
in his capacity as Semco's agent. He concludes that his actions as an agent cannot serve as the
basis for the Williamson County court's jurisdiction over him as an individual.

 The Texas Supreme Court has decided that the Texas long-arm statute reaches "as
far as the federal constitutional requirements of due process will allow." Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). Therefore,
it is necessary to consider only whether it is consistent with federal constitutional requirements
of due process for the Williamson County court to exercise in personam jurisdiction over Sutphin. 
See id. These due process requirements are assessed under a two-part test: "(1) whether the
nonresident defendant has purposely established minimum contacts with the forum state; and (2)
if so, whether the exercise of jurisdiction comports with fair play and substantial justice." Id.


 1. Minimum Contacts

 Under the minimum contacts analysis, we must first determine whether Sutphin has
purposely availed himself of the privilege of conducting activities in Texas, thus invoking the
benefits and protections of our laws. See id. Sutphin cannot be subjected to jurisdiction based
on events that are "random, fortuitous or attenuated . . . or the unilateral activity of another party
or a third person." Id. Sutphin's acts, whether committed in Texas or Colorado, must give rise
to the conclusion that he could reasonably anticipate being haled before a Texas court. See
Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). The minimum contacts analysis
encompasses both specific and general jurisdiction. See Guardian Royal, 815 S.W.2d at 227. 
Because there is no allegation that Sutphin engaged in continuous and systematic contacts with
Texas, general jurisdiction is not applicable. The Williamson County court may exercise specific
jurisdiction over Sutphin if the allegations "arise out of or relate to" Sutphin's contacts with
Texas. Id. This analysis will focus on the relationship among Sutphin, the State of Texas, and
the litigation. See id. at 228. The nature and quality of Sutphin's actions are more important than
the number of contacts with Texas. See Cartlidge v. Hernandez, 9 S.W.3d 341, 347 (Tex.
App.--Houston [14th Dist.] 1999, no pet. h.).

 Sutphin's contacts with Texas consisted of signing Semco's special appearance
pleadings and executing four affidavits that he knew, or should have known, would be submitted
to the Williamson County court. In its findings of fact, the court specifically found Sutphin signed
and swore to the pleadings and affidavits in his individual capacity and based upon his personal
knowledge. Furthermore, the court found that recitals in the affidavits that Sutphin was the
president of Semco merely fulfilled the requirement that affidavits in support of a special
appearance must show the affiant has such personal familiarity with the facts as would permit him
to personally testify as a witness. See Tex. R. Civ. P. 120a(3).

 Sutphin executed four affidavits containing assertions that were intended to negate
the bases of the Williamson County court's personal jurisdiction over Semco, of which he is the
president and sole shareholder. The pleadings and affidavits were purposefully directed at the
State of Texas in general and the Williamson County court in particular. Sutphin executed these
documents in order to secure for Semco the benefits and protections that Texas law provides to
non-resident defendants. Execution of these affidavits was voluntary. Sutphin may have had
personal motivations for helping Semco avoid suit in Texas, but his execution of the affidavits was
not compelled by the unilateral activity of Arnold or third parties. Sutphin could have chosen not
to execute the affidavits, leaving that task to another Semco employee or resolving that Semco
would defend suit in Williamson County.

 Rule 120a(3) of the Texas Rules of Civil Procedure sets forth the requirements of
affidavits filed in support of a special appearance. The requirement that the affidavit "show
affirmatively that the affiant is competent to testify" leads us to conclude that Sutphin could
reasonably anticipate being called before the Williamson County court to answer for the veracity
of his affidavits. Tex. R. Civ. P. 120a(3).

 The allegations that Sutphin's affidavits contain false and perjurious information
arise directly from Sutphin's contacts with Texas. If Sutphin had not executed the affidavits and
directed them toward the Williamson County court, there would be no allegations of false
testimony. Finally, the nature and quality of those contacts--pleadings and affidavits intended to
influence a court in its decision to grant or deny a special appearance--weigh in favor of the
Williamson County court's exercise of specific jurisdiction. Due to the nature of the proceedings,
the affiant's sworn statements can have a tremendous influence on the court's decision to grant
or deny the special appearance. We hold that Sutphin's contacts with Texas satisfy the minimum
contacts test of due process.


 2. Fair Play and Substantial Justice


 Once the minimum contacts test is satisfied, the defendant's actions are further
evaluated to determine whether the exercise of personal jurisdiction comports with the notions of
"fair play and substantial justice." Guardian Royal, 815 S.W.2d at 228. The burden is on the
defendant to show "a compelling case that the presence of some consideration would render
jurisdiction unreasonable." Id. at 231. The factors to be considered are: "(1) the burden on the
defendant; (2) the interests of the forum state in adjudicating the dispute; . . . (3) the plaintiff's
interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in
obtaining the most efficient resolution of controversies; and (5) the shared interest of the several
States in furthering fundamental substantive social policies." Id.

 Nothing in this record indicates that defending suit in Texas will be unduly
burdensome for Sutphin. In and of itself, distance is usually insufficient to defeat personal
jurisdiction. See id. In addition, all other factors weigh in favor of the Williamson County
court's assertion of jurisdiction. The State of Texas has the most compelling interest in
adjudicating an alleged fraud on a Texas court. Arnold is already engaged in litigation in
Colorado, but the District Court in Denver lacks the authority to impose sanctions for pre-removal
conduct that occurred in a Texas state court. See In re Bennett, 960 S.W.2d at 40. Therefore,
Arnold's interest in convenient and effective relief is best served if the Williamson County court
can investigate the allegations. The Williamson County court, which is familiar with the events
in question and aware of the impact Sutphin's affidavits had on the special appearance proceeding,
is the most efficient forum for these proceedings. We find that the Williamson County court's
exercise of in personam jurisdiction over Sutphin comports with the notions of fair play and
substantial justice.


Conclusion

 Having determined that the Williamson County court possesses the inherent power
to investigate the veracity of affidavits which influenced its decision to grant Semco's special
appearance, that Sutphin has established minimum contacts with Texas for purposes of this
proceeding, and that the assertion of personal jurisdiction comports with notions of fair play and
substantial justice, we affirm the final judgment of the Williamson County court.



 

 Mack Kidd, Justice


Before Chief Justice Aboussie, Justices Kidd and Smith

Affirmed

Filed: May 4, 2000

Publish

1.   Arnold did not request that the dismissal order in the underlying suit be set aside; its motion
was limited strictly to requesting sanctions pursuant to a contempt citation. 
2.   The plaintiffs' attorneys filed identical cases in each one of the district courts of Nueces
County, one of which was assigned to the trial court of Judge Max Bennett. When one of the
cases was finally assigned to the 105th District Court, the original petition was amended to join
700 plaintiffs. Plaintiffs' counsel then filed notices of nonsuit in the other cases. Judge Bennett
refused to sign the order of nonsuit and imposed fines of $10,000 on the two plaintiffs' attorneys,
who admitted their tactic was designed to secure a trial in the Nueces County district court of their
choosing. 
3.   Sutphin cites additional cases that rely on rule 329b(d) of the Texas Rules of Civil
Procedure. They illustrate the same proposition: Trial court orders vacating or modifying a
judgment in the original dispute after the expiration of plenary jurisdiction are void. See State ex
rel. Latty v. Owens, 907 S.W.2d 484, 486 (Tex. 1995); First Alief Bank v. White, 682 S.W.2d
251, 252 (Tex. 1984).
4.   There are several additional Texas cases in which inherent power is described broadly and
distinguished from jurisdiction. See Ex parte Pryor, 800 S.W.2d 511, 512 (Tex. 1990) (stating
inherent power is source of contempt power); Montgomery v. Kennedy, 669 S.W.2d 309, 312
(Tex. 1984) (stating extrinsic fraud prevents trial on merits and warrants bill of review relief); Ex
parte Gorena, 595 S.W.2d 841, 845 (Tex. 1979) (describing inherent power as "essential element
of judicial independence and authority"); National Life Co. v. Rice, 167 S.W.2d 1021, 1024 (Tex.
1943) (stating that jurisdiction is power to determine merits of suit between parties). 
5.   Sutphin maintains that federal case law is wholly irrelevant to this discussion because the
Federal Rules of Civil Procedure permit a court to investigate fraud upon the court long after
rendition of judgment. "This rule does not limit the power of a court to . . . set aside a judgment
for fraud upon the court." Fed. R. Civ. P. 60(b). There is no specific Texas counterpart to rule
60(b). However, the federal court did not rely on rule 60(b) in DuPont. See In re E.I. DuPont
de Nemours & Co.--Benlate Litigation, 99 F.3d 363, 367-68 (11th Cir. 1996). Rather, it relied
on the court's inherent power. See also Root Refining Co. v. Universal Oil Prods. Co., 169 F.2d
514, 535 (3d Cir. 1948).
6.   Arnold cites to several other federal cases in which courts relied on inherent power as the
source of authority for their actions. See Chambers v. NASCO, Inc., 501 U.S. 32 (1991); Cooter
& Gell v. Hartmarx Corp., 496 U.S. 384 (1990); Universal Oil Prods. Co. v. Root Refining Co.,
328 U.S. 575 (1946); Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).
7.   Olivares was ordered to perform certain acts related to real property and was jailed for
contempt when he failed to comply. See Ex parte Olivares, 662 S.W.2d 594, 595 (Tex. 1983). 
First Alief Bank was denied the right to foreclose on its judicial lien. See First Alief Bank, 682
S.W.2d at 252. Latty was no longer entitled to court-ordered child support. See State ex rel.
Latty, 907 S.W.2d at 485.
8.   Sutphin objects to the documents attached to Arnold's motion and considered by the
Williamson County court when it issued the show cause order and denied Sutphin's special
appearance. These documents were considered for the limited purpose of determining the court's
authority to conduct an inquiry into the allegations of perjury.
9.  Sutphin objects that the sanctions sought by Arnold are criminal in nature. Should the
Williamson County court find Sutphin in contempt and assess sanctions that are excessive, Sutphin
has a remedy by appeal. For example, in DuPont, the Eleventh Circuit found the district court
had the power to conduct the investigation that resulted in the finding that DuPont violated
discovery orders but reversed and remanded "because the district court did not afford DuPont the
procedural protections the Constitution requires for the imposition of criminal contempt
sanctions." 99 F.3d at 369.


 requesting sanctions pursuant to a contempt citation. 
2.   The plaintiffs' attorneys filed identical cases in each one of the district courts of Nueces
County, one of which was assigned to the trial court of Judge Max Bennett. When one of the
cases was finally assigned to the 105th District Court, the original petition was amended to join
700 plaintiffs. Plaintiffs' counsel then filed notices of nonsuit in the other cases. Judge Bennett
refused to sign the order of nonsuit and imposed fines of $10,000 on the two plaintiffs' attorneys,
who admitted their tactic was designed to secure a trial in the Nueces County district court of their
choosing. 
3.   Sutphin cites additional cases that rely on rule 329b(d) of the Texas Rules of Civil
Procedure. They illustrate the same proposition: Trial court orders vacating or modifying a
judgment in the original dispute after the expiration of plenary jurisdiction are void. See State ex
rel. Latty v. Owens, 907 S.W.2d 484, 486 (Tex. 1995); First Alief Bank v. White, 682 S.W.2d
251, 252 (Tex. 1984).
4.   There are several additional Texas cases in which inherent power is described broadly and
distinguished from jurisdiction. See Ex parte Pryor, 800 S.W.2d 511, 512 (Tex. 1990) (stating
inherent power is source of contempt power); Montgomery v. Kennedy, 669 S.W.2d 309, 312
(Tex. 1984) (stating extrinsic fraud prevents trial on merits and warrants bill of review relief); Ex
parte Gorena, 595 S.W.2d 841, 845 (Tex. 1979) (describing inherent power as "essential element
of judicial independence and authority"); National Life Co. v. Rice, 167 S.W.2d 1021, 1024 (Tex.
1943) (stating that jurisdiction is power to determine merits of suit between parties). 
5.   Sutphin maintains that federal case law is wholly irrelevant to this discussion because the
Federal Rules of Civil Procedure permit a court to investigate fraud upon the court long after
rendition of judgment. "This rule does not limit the power of a court to . . . set aside a judgment
for fraud upon the court." Fed. R. Civ. P. 60(b). There is no specific Texas counterpart to rule
60(b). However, the federal court did not rely on rule 60(b) in DuPont. See In re E.I. DuPont
de Nemours & Co.--Benlate Litigation, 99 F.3d 363, 367-68 (11th Cir. 1996). Rather, it relied
on the court's inherent power. See also Root Refining Co. v. Universal Oil Prods. Co., 169 F.2d
514, 535 (3d Cir. 1948).
6.   Arnold cites to several other federal cases in which courts relied on inherent power as the
source of authority for their actions. See Chambers v. NASCO, Inc., 501 U.S. 32 (1991); Cooter
& Gell v. Hartmarx Corp., 496 U.S. 384 (1990); Universal Oil Prods. Co. v. Root Refining Co.,
328 U.S. 575 (1946); Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).
7.   Olivares was ordered to perform certain acts related to real property and was jailed for
contempt when he failed to comply. See Ex parte Olivares, 662 S.W.2d 594, 595 (Tex. 1983). 
First Alief Bank was denied the right to foreclose on its judicial lien. See First Alief Bank, 682
S.W.2d at 252. Latty was no longer entitled to court-ordered child support. See State ex rel.
Latty, 907 S.W.2d at 485.
8.   Sutphin objects to the documents attached to Arnold's motion and considered by the
Williamson County court when it issued the show cause order and denied Sutphin's special