The **CADLE COMPANY, Daniel C. Cadle a/k/a Dan Cadle, and Citizens Against Corrupt Attorneys, Appellants,**

v.

David B. **LOBINGIER, Appellee.**

No. 2–98–257–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 5, 2000.

Rehearing En Banc Reconsideration Overruled Jan. 25, 2001.

Alan Wilson, Fort Worth, F. Dean Armstrong, Flossmoor, Illinois, Rittenhouse and Savant, P.C., William W. Rittenhouse, Austin, for appellants.

Bourland, Kirkman, Seidler & Evans, L.L.P., David L. Evans, Thomas M. Michel, Fort Worth, for appellee.

Panel B: DAY, DAUPHINOT, and RICHARDS, JJ.

## OPINION ON REHEARING

SAM J. DAY, Justice.

### I. Introduction

We withdraw our opinion and judgment of June 22, 2000 and substitute this opinion and judgment in their place. We deny David B. Lobingier's motion for rehearing.

In this appeal, The Cadle Company (Cadle), Daniel C. Cadle a/k/a Dan Cadle (Daniel), and Citizens Against Corrupt Attorneys (CACA) attack three separate

judgments: this court's 1996 contempt judgment, the trial court's arrearage judgment, and the trial court's 1998 contempt judgment. We dismiss in part, reform in part, affirm in part, and reverse and render in part.

## II. 1996 Contempt Judgment

In November 1992, Lobingier obtained a judgment against Cadle for $300,000. Cadle unsuccessfully appealed that judgment to this court, the Texas Supreme Court, and the United States Supreme Court. *See Cadle Co. v. Bankston & Lobingier,* 868 S.W.2d 918 (Tex.App.—Fort Worth), *writ denied per curiam,* 893 S.W.2d 949 (Tex.1994), *cert. denied,* 516 U.S. 810, 116 S.Ct. 58, 133 L.Ed.2d 21 (1995). The judgment was never superseded and was not paid until January 11, 1999.

In January and December 1995, Lobingier obtained two turnover orders in the trial court against Cadle and Daniel in an attempt to collect the $300,000 judgment. In July 1996, we held Cadle and Daniel in contempt of court for failing to comply with the 1995 turnover orders.

■ In several of their points, the Cadles[1] collaterally attack our 1996 contempt judgment, asserting it is void. Where, as here, the contemnor is not restrained, mandamus is the proper vehicle for collaterally attacking a contempt judgment. *See In re Long,* 984 S.W.2d 623, 625 (Tex. 1999) (orig.proceeding). The Cadles have twice attacked our 1996 contempt judgment via petition for writ of mandamus to the Texas Supreme Court on the very grounds they now assert in this appeal. Both times the supreme court has denied the petitions.[2] Accordingly, except to explain the basis for our civil contempt order, we will not revisit those issues a third time.

## III. Civil v. Criminal Contempt

Our 1996 contempt judgment imposed on the Cadles a $500 per day fine for every day after the date of the judgment that they did not comply with the 1995 turnover orders. The Cadles assert we could not assess the $500 per day fine because a per diem fine for two isolated acts of contempt—the violation of two turnover orders—is impermissible under section 21.001(b) of the government code. This argument is based on the incorrect assumption that the fine is a criminal contempt fine, when it is actually a civil contempt fine. As we discuss below, criminal contempt sanctions are limited by section 21.001(b), but civil contempt sanctions are not.

■ There are two types of contempt: civil and criminal. The classifications of civil and criminal contempt have nothing to do with the characterization of the underlying case or the burdensomeness of the contempt order. *See Ex parte Powell,* 883 S.W.2d 775, 778 (Tex.App.—Beaumont 1994, orig. proceeding); *Ex parte Johns,* 807 S.W.2d 768, 771 (Tex.App.—Dallas 1991, orig. proceeding). Rather, the distinction between civil and criminal contempt lies in the nature and purpose of the penalty imposed. *See Ex parte Busby,* 921 S.W.2d 389, 391 (Tex.App.—Austin 1996, pet. ref'd); *see also Shillitani v. United States,* 384 U.S. 364, 369–70, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966) (" 'It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish' civil from criminal contempt.... The test may be stated as: what does the court primarily seek to accomplish by imposing sentence?").

■ In a civil contempt order, the court exerts its contempt power to persuade the contemnor to obey a previous

---

**1.** For simplicity, we sometimes refer to The Cadle Company and Daniel Cadle collectively as "the Cadles."

**2.** *See In re The Cadle Co.,* No. 99–570 (Tex. Sept. 9, 1999) (orig.proceeding) (unpublished order); *In re The Cadle Co.,* No. 98–666 (Tex. July 13, 1998) (orig.proceeding) (unpublished order).

order, usually through a conditional penalty. Because the contemnor can avoid punishment by obeying the court's order, the contemnor is said to "carr[y] the keys of imprisonment in his own pocket." *Busby,* 921 S.W.2d at 391 (citing *Johns,* 807 S.W.2d at 770); *see also Ex parte Werblud,* 536 S.W.2d 542, 545 (Tex.1976) (orig.proceeding). Conversely, a criminal contempt order is punitive in nature and is an exertion of the court's inherent power to punish a contemnor for some completed act that affronted the court's dignity and authority. In criminal contempt proceedings, the court punishes the contemnor for improper past acts, and no subsequent voluntary compliance can enable the contemnor to avoid punishment. *See Busby,* 921 S.W.2d at 391.

■ Our 1996 contempt judgment contains a "hybrid" contempt order that assesses sanctions for both civil and criminal contempt. *See Ex parte Sanchez,* 703 S.W.2d 955, 957 (Tex.1986) (orig.proceeding) (recognizing that courts can incorporate both forms of contempt into one order). The civil contempt part of the order imposes a prospective, $500 per day fine from the date of the judgment forward to coerce the Cadles' future compliance with the 1995 turnover orders. The Cadles controlled the amount of this fine and could have avoided paying it altogether or stopped its accrual by complying with the turnover orders. The criminal contempt part of the order, which is governed by section 21.001(b), punishes Daniel with 180 days in jail for refusing to comply with the turnover orders up through the date of our contempt judgment.[3] Daniel could not avoid this punishment once it was imposed,

regardless of whether he later complied with the turnover orders.

■ The cases the Cadles rely on to challenge our civil contempt fine are inapposite because they all involve fines for criminal contempt.[4] Section 21.002 allows a court to punish each act of criminal contempt with a fine of not more than $500 or confinement in the county jail for not more than six months, or both. TEX.GOV'T CODE ANN. § 21.002(b) (Vernon Supp.2000). Because our fine is civil, however, it is not governed by section 21.002. *See Ex parte Shaklee,* 939 S.W.2d 144, 145 n. 2 (Tex. 1997) (orig.proceeding) (noting that section 21.002(b) sets out maximum punishment for *criminal* contempt); *In re Cantu,* 961 S.W.2d 482, 489 (Tex.App.—Corpus Christi 1997, orig. proceeding) (stating that section 21.002(b) merely sets out punishments allowed for criminal contempt and that coercive confinement for civil contempt is not limited by section 21.002(b)); *Ex parte Hawkins,* 885 S.W.2d 586, 588 (Tex.App.—El Paso 1994, orig. proceeding) (holding that punishment for criminal contempt—but not civil contempt-is limited by section 21.002(b)); *see also* TEX.GOV'T CODE ANN. § 21.002(e) (Vernon Supp.2000) (providing that section 21.002 "does not affect a court's power to confine a contemner to compel him to obey a court order").

The Cadles concede that indefinite, coercive confinement to induce compliance with a court order is authorized by section 21.002(e) but assert section 21.002 does not authorize the assessment of a daily coercive fine. While section 21.002 does not expressly authorize a coercive fine, it does not prohibit one. Although we could find

---

3. The writ of commitment was issued but never executed because Daniel is out of state.

4. *See, e.g., In re Long,* 984 S.W.2d at 625 (holding that fining district clerk $500 per day for past violations of injunction, which ordered him not to collect certain filing fees, would be impermissible absent proof that at least one lawsuit was filed each day, including weekends and holidays); *Ex parte Hudson,* 917 S.W.2d 24, 25 (Tex.1996) (orig.proceeding) (contemnor held in contempt and fined for past failure to comply with injunction requiring him to clean up his property); *Rosser v. Squier,* 902 S.W.2d 962, 962 (Tex.1995) (orig.proceeding) (contemnor fined for six prior acts of contempt); *Ex parte Carey,* 704 S.W.2d 13, 14 (Tex.1986) (orig.proceeding) (contemnor fined for past failure to comply with two court orders requiring him to submit to blood test in paternity suit).

no Texas case law directly on point, in the federal system, a coercive fine "is a standard remedy in civil contempt." *Blankenship & Assocs. v. NLRB*, 54 F.3d 447, 450 (7th Cir.1995). "A close analogy to coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil imprisonment, such fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." *International Union v. Bagwell*, 512 U.S. 821, 829, 114 S.Ct. 2552, 2558, 129 L.Ed.2d 642 (1994); *see also Alberti v. Klevenhagen*, 46 F.3d 1347, 1359 (5th Cir.1995) (upholding district court's imposition of prospective, per-inmate fine imposed to alleviate prison overcrowding).

▉ We believe a coercive fine is appropriate here because the unique circumstances of this case would render an order for coercive confinement meaningless. Cadle is an entity and therefore is not subject to coercive confinement. Daniel is an out-of-state resident whose extradition to Texas would likely be a lengthy and costly process.[5] Accordingly, we included the coercive fine in our 1996 contempt judgment.

## IV. Arrearage Judgment

As we discussed, our 1996 contempt judgment fined the Cadles $500 per day from the date of the judgment until they complied with the two 1995 turnover orders issued by the trial court.[6] Nearly two years later, in May 1998, when the Cadles still had not complied with the turnover orders, the trial court reduced the $500–per–day fine to judgment and rendered an arrearage judgment for Lobingier in the amount of $346,500.

▉ Our 1996 contempt judgment did not make the coercive fine payable to Lobingier, and the Cadles assert the trial court erred by rendering judgment that the fine was payable to Lobingier rather than the sovereign. A contempt fine is not payable to a private litigant. *See Rosser*, 902 S.W.2d at 962; *Edrington v. Pridham*, 65 Tex. 612, 617 (1886). Thus, the trial court erred by making the amount of the arrearage judgment payable to Lobingier.[7]

Lobingier contends the contempt fine should be payable to him because a civil contempt fine is for the benefit of the litigant. *See Ex parte Dolenz*, 893 S.W.2d 677, 680 (Tex.App.—Dallas 1995, orig. proceeding) (noting that court's civil or coercive power is remedial in nature for the benefit of the complainant). The fact that a civil contempt fine is for a litigant's benefit does not mean the fine should be paid to the litigant. Rather, the litigant benefits when the contemnor complies with the court's order to avoid paying the fine altogether or to stop its accrual. Indeed, the *Dolenz* court referred to a court's power of coercive *confinement* as being for the complainant's benefit. *Id.* Coercive confinement does not benefit the complainant financially apart from inducing the contemnor's compliance with a court order.[8] We

---

**5.** The Cadles' brief states: "Since the date of the judgments of contempt against Dan Cadle, he has not been able to set foot in the State of Texas for fear of incarceration pursuant to the punitive ... 180–day confinement period[ ]" in the 1996 contempt judgment.

**6.** Our July 1996 contempt judgment was rendered after we affirmed the first of the 1995 turnover orders and while the second was on appeal. *See In re Gabbai*, 968 S.W.2d 929, 931 (Tex.1998) (orig.proceeding) (holding that appellate court has exclusive jurisdiction to enforce orders being appealed, regardless of whether contempt occurred before or after appellate court acquired jurisdiction).

**7.** Lobingier contends we should not address this issue because it was not properly raised in the trial court. Regardless of whether it should have been framed as a standing issue or as a capacity issue, the specific issue we have addressed—whether a contempt fine is payable to a private litigant or to the sovereign—was raised below. Consequently, the issue is not waived on appeal.

**8.** In the federal system, a civil contempt fine is designed either to coerce the defendant into complying with the court's order or to compensate the complainant for losses sustained. *See International Union*, 512 U.S. at 829, 114 S.Ct. at 2558; *United States v. United Mine*

hold Lobingier cannot recover the contempt fine from the Cadles. However, as we discuss in section VII, below, the Cadles are liable for civil contempt fines payable to this court.

## V. 1998 Contempt Judgment

Despite its unsuccessful appeal of the $300,000 judgment, Cadle insisted Lobingier had wrongfully obtained the judgment. In April 1995, Daniel formed CACA and, in June 1995, Cadle and CACA sued Lobingier in Trumbull County, Ohio, alleging Lobingier had violated the Racketeer Influenced and Corrupt Organizations Act (RICO) and tortiously interfered with Cadle's business activities. Cadle assigned its claims against Lobingier to CACA for $1000 and ten percent of any recovery in the Ohio lawsuit.

In August 1995, Lobingier sought and obtained an injunction against Cadle and CACA. The August 1995 injunction enjoined Cadle and CACA from:

- "prosecuting or proceeding in any fashion" with the Ohio lawsuit, except to respond to orders from the Ohio court and to file documents necessary to dismiss the Ohio lawsuit;
- filing in any other jurisdiction a lawsuit similar to the Ohio lawsuit, except in the original court and cause number in which the $300,000 judgment had been rendered;
- seeking to prevent or stay the collection of the $300,000 judgment, except in the original court and cause number.

In October 1998, the trial court held Cadle, Daniel, and CACA in contempt of court for violating the temporary injunction.

*Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). The purpose of our July 1996 contempt judgment was not to compensate Lobingier financially with the fine but to induce Cadle to comply with the trial court's turnover orders so the $300,000 judgment would be satisfied. The record shows that Cadle has complied with the turnover orders and paid the $300,000 judgment with

■ Generally, a contempt judgment is only reviewable via a petition for writ of habeas corpus (if the contemnor is confined) or a petition for writ of mandamus (if no confinement is involved). *See Long,* 984 S.W.2d at 625. On April 19, 1999, the Cadles petitioned this court for mandamus relief from the 1998 contempt judgment.[9] Because the issues related to the arrearage judgment, which is appealable, and the 1998 contempt judgment are so intertwined, because the Cadles had already appealed both judgments before they filed their original proceeding, and because no one was confined, we are addressing the complaints about the 1998 contempt judgment in this appeal rather than by mandamus.

### *Daniel Cadle*

Daniel asserts the trial court violated his due process rights by holding him in contempt in the 1998 contempt judgment even though he was not present at the contempt hearing and had not waived his right to be present. The Texas Supreme Court has held that a person may not be held in contempt of court in absentia absent a waiver of the right to be present, regardless of whether the sanction imposed is coercive or punitive. *See Ex parte Alloju,* 907 S.W.2d 486, 487 (Tex.1995) (orig.proceeding). Even if the person has been served with notice of the hearing or violated a court order to appear at the hearing, the trial court cannot proceed without a waiver. Instead, the court should issue a capias or writ of attachment to bring the contemnor before the court. *See id.; Ex parte Johnson,* 654 S.W.2d 415, 422 (Tex. 1983) (orig.proceeding).

 There is no evidence that Daniel was present at the contempt hearing

interest. We express no opinion about whether a compensatory civil contempt fine would be proper.

9. *See In re The Cadle Co.,* No. 2–99–137–CV (Tex.App.—Fort Worth 1999, orig. proceeding) (not designated for publication).

that resulted in the 1998 contempt judgment. The judgment recites that he was properly served with notice of the hearing but simply states that he appeared "by and through [his] counsel of record." In contrast, the judgment recites that Lobingier "appeared in person and by and through his counsel of record...." Daniel asserts that he was not present at the hearing and did not waive his right to be present. Lobingier contends the facts that Daniel received notice of the hearing and that his counsel was present and vigorously participated in the hearing show he intentionally waived his right to be present. Notice of the contempt hearing and representation by counsel are insufficient to constitute waiver. *See Johnson*, 654 S.W.2d at 421–22 (holding that contemnor's failure to appear at hearing did not constitute waiver of right to be present, even though he had notice and was represented by counsel at hearing). Accordingly, the trial court erred by holding Daniel in contempt of court in the 1998 contempt judgment, and the judgment is void as to him.

### Timeliness of 1998 Contempt Judgment

■■■ Cadle and CACA assert the October 1998 contempt judgment is void because it was not signed sufficiently close in time to the contempt hearing to satisfy due process requirements. We disagree.

The initial contempt hearing was held on March 11, 1998, and the trial court notified the parties by letter on March 13 that it was holding both Cadle and CACA in contempt of court. In that letter, the court requested input from both Cadle and CACA, which apparently was not provided until at least late May 1998. Additional hearings were held on May 27, July 29, August 31, and September 3, 1998, after which the trial court signed a contempt judgment on September 3. Cadle and CACA do not attack the September 3 contempt judgment. After another hearing on September 10, 1998, the trial court made additional rulings and instructed counsel to draft a modified contempt judg-

ment to reflect those rulings. The modified contempt judgment was signed three weeks later, on October 2, 1998, and recites that it supersedes the September 3, 1998 contempt judgment.

Cadle and CACA rely on *Ex parte Anderson*, 900 S.W.2d 333, 334–35 (Tex. 1995) (orig.proceeding) and *Ex parte Delcourt*, 888 S.W.2d 811, 812 (Tex.1994) (orig.proceeding), both of which are inapposite here. The trial courts in both of those cases issued a first and then a second, modified, contempt judgment and commitment order with no hearing between the two rulings. In addition, the first contempt judgments and commitment orders in both cases were successfully challenged via habeas corpus proceedings. *Anderson*, 900 S.W.2d at 335; *Delcourt*, 888 S.W.2d at 812. We do not have either of those situations here. We hold that the October 1998 contempt judgment was signed sufficiently close to the September 10 hearing to protect Cadle's and CACA's due process rights.

### Sufficiency of Notice of Alleged Contempt

Cadle and CACA complain that the trial court assessed contempt sanctions in the 1998 contempt judgment beyond what Lobingier requested in his motion for contempt.

In his motion for contempt, Lobingier sought both punitive and coercive contempt sanctions against Cadle for appealing the Ohio lawsuit after it was dismissed by the Ohio trial court. Lobingier also sought punitive and coercive sanctions against CACA for attempting to force him to turn over the $300,000 judgment to satisfy the default judgment CACA had obtained against Lobingier in Travis County. Lobingier asserted CACA's collection efforts in Travis County were an improper attempt to prevent him from collecting the $300,000 judgment from Cadle.

■■■ Due process requires that full and unambiguous notice of the accusation of

contempt be served on the alleged contemnor in the motion for contempt, a show-cause order, or equivalent legal process that states when, how, and by what means the party has been guilty of the alleged contempt. *See Ex parte Chambers*, 898 S.W.2d 257, 262 (Tex.1995) (orig.proceeding); *Ex parte Blanchard*, 736 S.W.2d 642, 643 (Tex.1987) (orig.proceeding). Absent such notification, the contempt judgment is a nullity. *See Blanchard*, 736 S.W.2d at 643.

The 1998 contempt judgment assesses punitive sanctions of $500 per day against Cadle and CACA for appealing the Ohio lawsuit and $500 total against CACA for attempting to prevent Lobingier from collecting the $300,000 judgment via the Travis County turnover order. Lobingier's motion for contempt gave Cadle sufficient notice that he was seeking contempt sanctions for appealing dismissal of the Ohio lawsuit and gave CACA sufficient notice that he was seeking contempt sanctions for obtaining the Travis County turnover order.

■ The motion for contempt did not, however, allege that CACA violated the temporary injunction by appealing the Ohio lawsuit. The motion simply stated that "Cadle proceeded to prosecute the litigation in Ohio." Also, while Lobingier testified at the contempt hearing in March 1998 that Cadle appealed the Ohio lawsuit, he did not testify that CACA appealed. We hold that CACA did not receive notice of any contempt allegations concerning the appeal of the Ohio lawsuit. Therefore, the contempt sanctions against CACA for appealing dismissal of the Ohio lawsuit are void.

The 1998 contempt judgment also recites that CACA sought to prevent Lobingier from collecting the $300,000 judgment by abstracting the Travis County judgment CACA obtained against Lobingier. The 1998 contempt judgment assesses a coercive, $500–per–day fine against CACA from the date of the judgment until CACA provides Lobingier's attorneys proof that all such abstracts of judgment have been released. CACA asserts this fine is void because the motion for contempt does not mention the abstracts of judgment. Lobingier contends that CACA's due process rights were protected because he testified about the abstracts of judgment at the March 1998 contempt hearing.

■ Lobingier did testify about the abstracts of judgment at the March 1998 hearing, but he did not indicate that he was seeking separate contempt sanctions based on those abstracts. Lobingier did expressly request contempt sanctions based on the abstracts at the September 10 hearing, but oral notification of the nature of contempt charges, especially when delivered on the day of the contempt hearing, is deficient on its face. *See Ex parte Vetterick*, 744 S.W.2d 598, 599 (Tex. 1988) (orig.proceeding); *In re Smith*, 981 S.W.2d 909, 911 (Tex.App.—Houston [1st Dist.] 1998, orig. proceeding). We hold CACA did not receive adequate notice of Lobingier's contempt allegations concerning the abstracts of judgment; therefore, the $500–per–day coercive fine against CACA is void.

### *Sufficiency of Evidence to Support Contempt Sanctions*

■ Cadle challenges the legal and factual sufficiency of the evidence to support the trial court's conclusion that Cadle violated the temporary injunction by appealing the dismissal of the Ohio lawsuit. It is undisputed that Cadle appealed the dismissal of the Ohio lawsuit; however, Cadle asserts the injunction only prohibited it from proceeding in the Ohio trial court and not from filing an appellate brief in an appellate court. This contention is wholly without merit. The temporary injunction enjoined Cadle from "prosecuting or proceeding in any fashion with the lawsuit filed in Trumbull County, Ohio," except to respond to orders from the Ohio court. By its express terms, this prohibition is tied to the entire lawsuit, not to a particu-

lar stage in the proceeding. The filing of an appellate brief is continued prosecution of a lawsuit and is not, as CACA contends, simply a response to a court order.

It is also undisputed that CACA obtained a turnover order in the Travis County lawsuit in an attempt to force Lobingier to turn over the $300,000 judgment he had obtained against Cadle. Based on this evidence, the trial court held CACA in contempt for violating the temporary injunction's prohibition against seeking to prevent Lobingier from collecting the $300,000 judgment. CACA asserts there is no evidence to support the trial court's ruling and that the temporary injunction did not prohibit it from trying to enforce the turnover order.[10] CACA does not cite any legal authority for most of its arguments under this point, so we will not address them. *See* Tex.R.App.P. 38.1(h). Moreover, the temporary injunction enjoined CACA from seeking to prevent or stay Lobingier's collection of the $300,000 judgment, "directly and indirectly," except in the original Tarrant County court and cause number. CACA's procural of the Travis County turnover order was an attempt to acquire the $300,000 judgment from Lobingier and thereby prevent him from collecting on it. CACA's actions were taken in Travis County, not in the original Tarrant County court and cause number. This conduct clearly violated the temporary injunction. We hold the evidence is sufficient to show that Cadle and CACA violated the temporary injunction.

### Excessive Criminal Contempt Sanctions

Cadle and CACA also assert that the trial court erred by fining them in excess of the statutorily-authorized maximum for each act of contempt and by making the contempt fine payable to Lobingier instead of the sovereign.

■ The contempt sanctions assessed against Cadle and CACA for ap-

pealing the Ohio lawsuit and attempting to prevent Lobingier from collecting the $300,000 judgment via the Travis County turnover order are criminal contempt sanctions; they are punishment for improper past acts, and no voluntary compliance with the temporary injunction could enable Cadle and CACA to avoid them. *See Busby*, 921 S.W.2d at 391. Accordingly, the maximum punitive fine that could be assessed against Cadle and CACA was $500 per contemptuous act, and the trial court erred in assessing a $500 per day fine for appealing the dismissal of the Ohio lawsuit. *See* Tex.Gov't Code Ann. § 21.002(b); *Long*, 984 S.W.2d at 625 (holding that contemnor could not be fined $500 per day for past violations of court order absent proof that contemnor committed a new act of contempt each day). The trial court also erred by making the contempt fines payable to Lobingier rather than to the sovereign. *See Rosser*, 902 S.W.2d at 962.

The trial court properly fined CACA $500 for obtaining the Travis County turnover order but should have fined Cadle only $500 for appealing the Ohio lawsuit. These fines should have been made payable to the trial court.

### Clean Hands

CACA also asserts the trial court erred in holding it in contempt with regard to the Travis County turnover order because Lobingier did not seek the contempt sanctions with "clean hands." CACA admits it has no legal authority for contending Lobingier did not have clean hands. Accordingly, we will not consider this point. *See* Tex.R.App.P. 38.1(h).

### VI. Request for "Release" from Contempt Fines

■ The Cadles assert they are entitled to be "released" from both the 1996

---

10. Cadle also challenges the sufficiency of the evidence to support this portion of the October 1998 contempt judgment, but we do not address this argument because the contempt finding and sanction are not against Cadle.

and 1998 contempt judgments because they have complied with the $300,000 judgment, the turnover orders, and all related matters. The confinement order against Daniel in the 1996 contempt judgment and the fine against Cadle in the 1998 contempt judgment are criminal contempt sanctions. Thus, Cadle and Daniel cannot avoid these punitive sanctions by their post-contempt satisfaction of the $300,000 judgment and other orders. *See Busby,* 921 S.W.2d at 391.

Further, the Cadles did not comply with the coercive portion of our contempt judgment until January 11, 1999, when funds that Cadle had deposited in the registry of the federal district court were paid to Lobingier pursuant to a federal district court order.[11] Thus, 922 days elapsed during which the Cadles failed to comply with our July 1996 judgment (July 3, 1996—January 11, 1999). Consequently, the Cadles are liable for $461,000 in civil contempt fines, payable to this court. The Cadles could have avoided these civil sanctions by complying with the turnover orders before the sanctions accrued but chose not to. Now that the sanctions have accrued, the Cadles must pay them. *See id.* (stating the contemnor can only avoid coercive sanctions by timely complying with contempt order).

## VII. Attorney's Fees

Cadle asserts the trial court erred by awarding Lobingier $5,000 in attorney's fees related to the 1998 turnover order Lobingier obtained concerning the funds Cadle had deposited in the federal court registry. Lobingier concedes that the fee award is improper. Accordingly, we sustain this issue.

## VIII. Conclusion

We dismiss the Cadles' appeal of our 1996 contempt judgment. We reverse the trial court's arrearage judgment and render judgment that Lobingier cannot recover civil contempt sanctions from the Cadles. However, we render judgment that the Cadles are jointly and severally liable for the $461,000 in civil contempt fines, payable to this court, due to their failure to comply with the civil contempt order in our 1996 contempt judgment for 922 days. It is ordered that $461,000 must be paid into the registry of this court no later than 5:00 p.m. on October 26, 2000.

We vacate the trial court's 1998 contempt judgment as to Daniel and the contempt sanctions against CACA for appealing dismissal of the Ohio lawsuit and abstracting the Travis County judgment. We reform the $500–per–day fine against Cadle for appealing dismissal of the Ohio lawsuit to $500 total. We affirm the $500 fine against Cadle as reformed and also affirm the $500 fine against CACA for wrongfully obtaining the Travis County turnover order. We reverse the 1998 contempt judgment's award of these sanctions to Lobingier and render judgment that the fines are payable to the trial court.

We reverse the $5,000 award of attorney's fees to Lobingier and render judgment that Lobingier take nothing on his fees claim.

Cadle, Daniel, and CACA are jointly and severally liable for the costs incurred in this appeal, for which let execution issue.

---

11. Immediately after the trial court signed the arrearage judgment, Cadle sought relief in the federal district court and paid over $400,000 into the federal court's registry. The federal district judge found that Cadle's federal lawsuit "was obviously contrived by [Cadle] to delay payment of sums due and owing to [Lobingier]" and dismissed it. In August 1998, the trial court ordered Cadle and Daniel to turn the funds in the federal court registry over to Lobingier, and, in December 1998, the federal court ordered those funds to be paid to Lobingier.