**In re ACCEPTANCE INSURANCE COMPANY, Relator.**

No. 2–00–292–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 22, 2000.

Bourland, Kirkman, Seidler & Evans, L.L.P., David L. Evans, Thomas M. Michel, Fort Worth, for Appellant.

Noteboom and Gray, Charles Noteboom, Jay Gray, J. Mark Sudderth, Fort Worth, for Appellee.

Before DAY, LIVINGSTON, and GARDNER, JJ.

## OPINION

GARDNER, Justice.

Relator, Acceptance Insurance Company, seeks mandamus relief against the Honorable Paul Enlow, Judge of the 141st Judicial District Court of Tarrant County. Relator complains of Judge Enlow's rulings in *sua sponte* scheduling and conducting a hearing to investigate whether to impose sanctions against relator for possible violations of court orders for mediation. Specifically, relator complains of Judge Enlow's overruling of its objections to lack of any notice or pleadings advising it of the nature of the charges as well as his scheduling of a second hearing, over relator's continued objections, for further investigation of relator's possible lack of compliance with the court's mediation orders. We conditionally grant the petition for writ of mandamus.

## FACTUAL BACKGROUND

Rodrigo Martinez filed suit in the 141st District Court against Linbeck Construction Company (Linbeck) as the result of injuries received while working on a construction project. Linbeck was named as an additional insured on relator's policy of insurance issued to a subcontractor. During the litigation, insurance coverage disputes arose. The parties to those disputes, including relator, initially were joined in the lawsuit and were later severed by the trial court into a separate suit. The main lawsuit was set for trial for July 31, 2000.

On July 26, 2000, the trial court ordered the parties in the main lawsuit to mediation before trial. The order specified that all parties, specifically including relator, "participate by a representative or representatives, in addition to counsel, who shall have unlimited settlement authority, and who shall participate in person, not by telephone or other remote means." Further, the order required that, if a party had liability insurance as to a claim being asserted in the litigation, "a representative of each insurance company providing such coverage who has full authority to offer to pay policy limits in settlement shall be present at, and participate in, the settlement conference in person, not by telephone or other remote means." The order also provided that the parties "are to make a good faith effort to settle."

Mediation took place pursuant to the trial court's order on July 28, 2000. Relator appeared at the mediation by counsel and by corporate representative, senior claims specialist Chereyne Mehalko. Mediation was unsuccessful, and the case proceeded to trial on July 31.

During trial, the trial court issued a second order of referral to mediation, this time in both the main lawsuit and the insurance coverage lawsuit. On August 7, the parties attended the second court-ordered mediation. Again, relator participated by its counsel and Ms. Mehalko. The second mediation was likewise unsuccessful. The trial resumed and resulted in a verdict on August 11, in favor of real party in interest apparently in excess of all potentially available policy limits.

At 3:00 p.m. on Friday, August 11, relator's counsel received a telephone call from the court coordinator for the 141st District Court advising that the trial court intended to conduct a sanctions hearing at 9:00 a.m. on Monday, August 14. Relator re-

ceived no written motion for sanctions or for contempt nor any other document advising it of the nature of the improper conduct charged against it. Upon receiving the call from the court coordinator, relator's counsel traveled to the courthouse and, with opposing counsel present, was informed by the trial court that the basis for the hearing would be that relator had violated the mediation order.

On the morning of August 14, relator filed objections to the hearing, asserting that no motion had been filed, that no notice had been provided, and that the proposed hearing violated section 154 of the Texas Civil Practice and Remedies Code relating to mediation confidentiality. Overruling those objections, the trial court proceeded with the hearing with counsel for relator continuing to object to the hearing, re-urging lack of notice and lack of pleadings, as well as re-urging violation of the confidentiality provisions relating to mediation.

The trial court orally ordered relator's corporate representative, Ms. Mehalko, to attend the hearing. She was called to the stand by counsel for real party in interest and was repeatedly questioned, over relator's strenuous objections, regarding whether she possessed full policy-limit authority, her personal knowledge of matters in the company file, her knowledge of the case and preparation for the mediations, and communications with her supervisor by telephone and with counsel for real party in interest during the mediation.

At the conclusion of that hearing, unsatisfied with Ms. Mehalko's answers, the trial court set another hearing for August 25. The trial court stated: "All right. The Court will note that the adjustor's knowledge as to the facts and potential damages of this case are so woeful as to constitute a sham of following my order." Allowing the attorneys for real party in interest, at their "pleasure," to name the additional representative of relator they wished to question at the next hearing, the trial court ordered that a senior vice president for relator, Robert Haney, personally appear at the next scheduled hearing. Relator reasserted its previous objections as to lack of notice, pleadings, and violation of mediation confidentiality to no avail.

## THESE PROCEEDINGS

On August 23, 2000, relator filed its petition for writ of mandamus in this court, together with an emergency request for a stay. On August 24, we requested a response and ordered that Judge Enlow's oral order of August 14 (setting a hearing for August 25) "and all other proceedings in [the case] concerning the conduct of the parties at mediation," be stayed until further notice by this court. On September 11, notwithstanding our issuance of that stay order, attorneys for real party in interest filed a written motion for sanctions in the trial court against relator and others.

Relying upon testimony obtained at the first sanctions hearing over relator's objections, the newly-filed motion explicitly sought sanctions for relator's alleged failure to send a representative to mediation "with authority," failing to participate in mediation in "good faith," and failure to make a good faith effort to adhere to the trial court's mediation orders. As sanctions, real party in interest sought attorney's fees of $250,000. Judge Enlow set the motion for hearing on October 6. Upon being advised of the motion and setting in direct violation of this court's stay order of August 24, we issued a second stay order, struck the motion for sanctions, set aside and vacated the setting for the hearing of October 6, reiterated the provisions of our previous stay order, and further ordered that any further violations of either stay order would result in contempt proceedings.

## RELATOR'S CONTENTIONS

Relator first contends mandamus should be granted to require Judge Enlow to declare void his oral order setting the

hearing of August 14, set aside his orders overruling relator's objections to the hearing, and set aside the proceedings of that date. Relator characterizes the hearing as a constructive contempt matter relating to alleged violations of court-ordered mediation. As such, relator urges, the hearing and all rulings connected with it were void because it was denied due process by the lack of notice of the charges against it.

Further, relator contends the requirement contained in the mediation orders mandating that relator negotiate in "good faith" is void and, hence, the trial court's rulings allowing interrogation of its corporate representative on any issues relating to mediation in "good faith" are likewise void. Additionally, relator urges that the inquiries of real party in interest as to the authority of relator's corporate representative regarding her conduct and communications at the mediations violated the confidentiality provisions of the Texas ADR Act as well as the work-product and attorney-client privileges.

Finally, relator contends any further hearings inquiring into the authority of its representative, including the questioning of its vice-president of claims originally scheduled for August 25, would necessarily be based on information improperly obtained at the first hearing and would further violate the confidentiality requirements of the ADR Act. Accordingly, relator requests issuance of the writ of mandamus compelling Judge Enlow to set aside and vacate the proceedings of August 14, 2000 and seal the record of that hearing, and to set aside and vacate any orders scheduling further hearings concerning the conduct of the parties at mediation.

## STANDARD OF REVIEW

Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law where there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). This standard is satisfied where the trial court "effectively deprive[s] [the relator] of its fundamental due process right to notice...." *In re L.A.M. & Assocs.*, 975 S.W.2d 80, 83 (Tex. App.—San Antonio 1998, orig. proceeding) (quoting from *Union Carbide. Corp. v. Moye*, 798 S.W.2d 792, 793 (Tex.1990)).

Mandamus relief may also be afforded where the trial court's order is void. *E.g., Hansen v. Sullivan*, 886 S.W.2d 467, 469 (Tex.App.—Houston [1st Dist.] 1994, orig. proceeding); *Decker v. Lindsay*, 824 S.W.2d 247, 249 (Tex.App.—Houston [1st Dist.] 1992, orig. proceeding). Additionally, mandamus is available to prevent improper disclosure of privileged matters. *Walker*, 827 S.W.2d at 843. Where the contemnor is not restrained, mandamus is proper to collaterally attack a contempt order. *In re Long*, 984 S.W.2d 623, 625 (Tex.1999). Finally, mandamus may issue to correct an abuse of discretion in imposing sanctions without notice or meaningful hearing in violation of due process. *See In re Bennett*, 960 S.W.2d 35, 40 (Tex.1997) (holding court of appeals abused its discretion by issuing writ of mandamus directing trial court to vacate sanctions order where sanctioned counsel were afforded due process by being given notice of trial court's intent to consider sanctions and an opportunity to respond), *cert. denied, In re Hilliard*, 525 U.S. 823, 119 S.Ct. 66, 142 L.Ed.2d 52 (1998). The relator bears the burden of establishing his entitlement to mandamus relief. *Hansen*, 886 S.W.2d at 469; *Decker*, 824 S.W.2d at 249.

## DUE PROCESS RIGHT TO NOTICE

Due process requires that full and unambiguous notice of an accusation of contempt be served on the alleged contemnor in a motion for contempt, show cause order, or equivalent legal process stating how, when, and by what means the party has been guilty of the alleged contempt. *Cadle Co. v. Lobingier*, 34 S.W.3d 598, 605-06 (Tex.App.—Fort Worth 2000, no pet. h.); *Ex parte Chambers*, 898

S.W.2d 257, 262 (Tex.1995). Absent such notification, a contempt order is a nullity. *Ex parte Blanchard,* 736 S.W.2d 642, 643 (Tex.1987).

 A violation of a court's order is an issue of contempt. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979). In response to relator's vigorous objections to the lack of notice of the hearing, real party in interest has urged that Judge Enlow had inherent power on his own motion to punish relator by contempt for violations of court orders without prior notice. Such inherent power to punish without prior notice and meaningful hearing exists only with respect to "direct" contempt. A direct contempt is one that occurs within the court's presence, whereas a constructive contempt is one that occurs outside the court's presence. *Id.; Ex parte Werblud,* 536 S.W.2d 542, 546 (Tex.1976). The asserted violations of the mediation orders would necessarily have been for constructive contempt, not direct contempt, because any violation occurred outside the court's presence.[1]

 The distinction between direct and constructive contempt is also significant because cases involving constructive contempt are afforded more procedural protections. *Ex parte Gordon,* 584 S.W.2d at 688; *Ex parte Werblud,* 536 S.W.2d at 546. Notice of the charges and an opportunity to defend against them are an alleged contemnor's most fundamental due process right. *Ex parte Jackman,* 663 S.W.2d 520, 523 (Tex.App.—Dallas 1983, orig. proceeding). The notice must conform to any relevant procedural requirements and be actually delivered to the contemnor in a timely fashion. *Ex parte*

*Gordon,* 584 S.W.2d at 689, 690. Notice must be personally served on the contemnor; notice that does not reach the contemnor is inadequate even if delivered to his attorney. *Ex parte Herring,* 438 S.W.2d 801, 803 (Tex.1969). Notice must also be given a reasonable time before the hearing to comply with due process. *Hayes v. Hayes,* 920 S.W.2d 344, 346–47 (Tex.App.—Texarkana 1996, writ denied). At a minimum, an application for an order and notice of any hearing not presented to the court during a trial or other proceeding must be served on all parties not less than three days before the time set for the hearing, unless the time is shortened by the court. Tex.R.Civ P. 21.

 Real party in interest does not dispute that relator received no written notice of the hearing of August 14 or. of that subsequently scheduled for August 25. Real party in interest's answer is simply that there was no "motion" as that term is used in rule 21, to which the three-day notice requirement could apply because the trial court set the hearing apparently based on an oral request by real party in interest. Lack of a written motion is no excuse. We decline to engage in such circular reasoning that would permit a party to evade the requirement of timely notice of a motion by simply not filing any motion at all.

 Further, real party in interest postulates that there has been no lack of timely notice before a hearing because there has been no "hearing." According to this theory, the trial judge merely exercised his inherent authority to investigate into whether his mediation orders were obeyed. At oral argument in this court,

---

1. Contempt may also be civil or criminal. *See Cadle Co.,* 34 S.W.3d at 601. The classification of contempt as civil or criminal is determined by the nature and purpose of the punishment. *Id.* It has nothing to do with the nature of the underlying proceedings. *Id.* In a civil contempt order the court attempts to persuade the contemnor to perform or obey a previous order, usually through a conditional penalty. *Id; see also Ex parte Busby,* 921

S.W.2d 389, 391 (Tex.App.—Austin 1996, pet. ref'd) (noting contemnor is said to "carr[y] the keys of imprisonment in his own pocket"). Sanctions for both criminal and civil contempt may be imposed by the same order. *Cadle Co.,* 34 S.W.3d at 602. Criminal contempt punishment, by fine or incarceration, is for improper past acts and no subsequent voluntary compliance can avoid the punishment. *Id.*

counsel for real party in interest suggested that the proceeding scheduled to take place on August 25, had it not been stayed by this court, would likewise not have been a hearing but a "deposition" before the trial court.

In support of its interesting proposition that the trial court may conduct investigatory non-hearings into possible contempt by parties, real party in interest relies upon the exercise of the court's "inherent powers." A court has "all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders...." Tex.Gov't Code Ann. § 21.001(a) (Vernon Supp.2000). A court does not, however, have power to violate a party's due process rights by investigating possible contempt on sanctionable conduct—by hearing or by non-hearing—without notice. Real party in interest cites no authority to support the proposition that the trial court had the power to do so.

To support its argument that the proceedings were within the inherent authority of the trial court to investigate possible violations of its mediation orders, real party in interest relies upon *Sutphin v. Tom Arnold Drilling Contractor, Inc.,* 17 S.W.3d 765 (Tex.App.—Austin 2000, no pet.). *Sutphin,* however, does not address inherent power to issue *sua sponte* orders to haul parties before a court for an investigation into contempt charges with no notice, pleadings, or show cause order as to the nature of the charges against them.

In *Sutphin,* the issue was whether the court lost jurisdiction over the suit upon expiration of its plenary power and lacked jurisdiction for that reason to exercise its inherent power regarding a contempt citation. 17 S.W.3d at 773. The court of appeals did not hold that the trial court had any inherent power to undertake an investigation without prior notice or motion. Indeed, in contrast to this case, the plaintiff in *Sutphin* filed a motion, pursuant to which the court issued a show cause order as to why the defendant should not be held in contempt for filing perjurious

affidavits in support of its special appearance. *Id.* at 767. The Austin Court of Appeals held that, despite the expiration of the trial court's plenary power, it retained inherent power to investigate the veracity of affidavits upon which it had relied in determining its jurisdiction. *Id.* at 770. Nothing in *Sutphin* suggests that a court may "investigate" possible constructive contempt without the proper notice required by due process.

That the trial court was, indeed, conducting a hearing regarding suspected or asserted violation of its orders of mediation by relator is clear from the reporter's record of the hearing, which has been made a part of the record in this court. Judge Enlow, himself, characterized the hearing as being for "sanctions." Moreover, counsel for real party in interest revealed the real purpose of requesting the hearing toward the end of his questioning of Ms. Mehalko as follows: "The purpose of this hearing, Judge, is to show that [relator] had a blatant disregard for Texas law with respect to how a mediation ought to be conducted."

Relator views the hearing of August 14 as a constructive contempt proceeding, while the trial court and real party in interest characterize it as one to inquire as to whether "sanctions" should be imposed for violation of the pre-trial mediation orders. The difference, however, is without a distinction. The power to sanction, like contempt, exists to allow a court to enforce its orders by imposing a penalty for their violation. *Hayes,* 920 S.W.2d at 346. Under the rules of civil and appellate procedure, sanctions may include penalties such as dismissal or striking of pleadings. *Id.* Contempt proceedings, in contrast, are by definition limited to monetary fines or incarceration. *See* Tex.Gov't Code Ann. § 21.002 (Vernon 1988 and Supp.2000). Additionally, monetary fines for contempt are not payable to the opposing party as are monetary sanctions. *See Cadle Co.,* 34 S.W.3d at 607.

■ Like contempt proceedings, proceedings for sanctions must comport with due process, affording a party an adequate opportunity to be heard. *In re Bennett*, 960 S.W.2d at 40 (holding power to sanction is limited by due process clause of United States Constitution); *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–400 (Tex.1979); *Worldwide Anesthesia Assocs. v. Bryan Anesthesia, Inc.*, 765 S.W.2d 445, 447 (Tex.App.—Houston [14th Dist.] 1988, no writ). Thus, the traditional due process protections of notice and hearing required for contempt are also necessary before imposition of sanctions. *See* Tex.R.Civ.P. 215.1; *Hayes*, 920 S.W.2d at 346–47; *see also Sears, Roebuck & Co. v. Hollingsworth*, 156 Tex. 176, 293 S.W.2d 639, 642 (1956).

■ Additionally, the imposition of severe sanctions requires notice "reasonably calculated, under the circumstances, to appraise interested parties of the pendency of the action and to afford them the opportunity to present their objections." *In re L.A.M.*, 975 S.W.2d at 83 (quoting *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988)); *see, e.g.*, Tex.R.Civ.P. 13, 21b; Tex.R.App.P. 45; Tex.Civ.Prac. & Rem.Code Ann. §§ 9.012(a), 10.003 (Vernon Supp.2000).

By the written motion for sanctions set for hearing and set for October 6 filed by counsel for real party in interest, it is revealed that they seek neither fines nor incarceration but that they are seeking further investigation into, and asking for $250,000 in attorney's fees as a sanction for, relator's alleged failure to mediate in accordance with the court's mediation orders. We believe it is more accurate to view both the original hearing on August 14 and the additional hearing sought by the real party in interest as sanction proceedings rather than contempt proceedings. *See Hayes*, 920 S.W.2d at 346.

■ Regardless of whether the proceedings are treated as for contempt or sanctions, it is undisputed that the only notice afforded to relator was *oral* notice as to both the hearing of August 14 and the scheduled hearing of August 23, which was stayed by this court. Oral notice was insufficient, as a matter of law. *In re L.A.M.*, 975 S.W.2d at 83; *see also Ex parte Vetterick*, 744 S.W.2d 598, 599 (Tex. 1988) (orig.proceeding); *In re Smith*, 981 S.W.2d 909, 911 (Tex.App.—Houston [1st Dist.] 1998, orig. proceeding). The trial court clearly abused its discretion in scheduling the hearing of August 14 without written notice, and in overruling relator's objections to the denial of the fundamental right of meaningful notice of the hearing or the allegations against relator. *In re L.A.M.*, 975 S.W.2d at 83; *Aldine Indep. Sch. Dist. v. Baty*, 946 S.W.2d 851, 852 (Tex.App.—Houston [14th Dist.] 1997, no writ) (holding that spontaneous imposition of sanctions without notice or hearing violated due process).

## INVESTIGATING THE MEDIATION PROCEEDINGS

### *Mediation in "Good Faith"*

■ Over relator's objections, the trial court allowed real party in interest to inquire about whether relator mediated in "good faith." The trial court had no authority to investigate this issue or to enforce its order requiring "good faith" negotiation. The policy underlying mediation pursuant to chapter 154 of the Alternative Dispute Resolution Act is set forth in Tex. Civ.Prac. & Rem.Code Ann. § 154.002 (Vernon 1997), providing: "It is the policy of this state to encourage the peaceable resolution of disputes . . . and the early settlement of pending litigation through *voluntary* settlement procedures." (emphasis added). It is the responsibility of the courts to carry out this policy. *See id.* § 154.003.

This policy is consistent with the legislative scheme of the Act by which a court may compel parties to participate in alternative dispute resolution, including mediation, but it cannot compel them to negotiate in good faith or to settle their dispute.

*See, e.g., Texas Parks & Wildlife Dep't v. Davis,* 988 S.W.2d 370, 375 (Tex.App.—Austin 1999, no pet.) (op. on reh'g); *Hansen,* 886 S.W.2d at 469 (holding court cannot force parties to peaceably negotiate or settle their differences).

An order requiring "good faith" negotiation does not comport with the voluntary nature of the mediation process and has been held void. *Decker,* 824 S.W.2d at 252 (noting dominant legislative intent is to compel referral, not resolution). A trial court has power to enforce its "lawful" orders. *See* Tex.Gov't.Code Ann. § 21.001(a). But because the portion of the trial court's mediation orders directing the parties to "make a good faith effort to settle" is void, the trial court had no authority to investigate whether relator complied with that portion of the orders.

■ Real party in interest protests that the court is not attempting to punish relator for failing to negotiate in "good faith," but was merely allowing inquiry into whether relator's representative, Ms. Mehalko, had "authority" to settle for the full amount of policy limits as the orders required. Many of the questions directed to Ms. Mehalko at the August 14 hearing—how long she had been in charge of the file, how much she knew about the alleged past and future lost earnings and other damages, whether she knew the identity of eyewitnesses and experts, what knowledge she had of Texas law and how much familiarity she had with the file—were irrelevant to her settlement authority. These questions were directed toward eliciting information as to how much she had prepared for the mediation. The issue of preparedness relates to whether a party mediated in good faith, not to whether the party attended or participated in the mediation.

That real party in interest was seeking information regarding whether relator mediated in "good faith" is confirmed by his written motion for sanctions filed after this court's stay order was issued and alleging that relator "failed to send a representative [to mediation] with authority, *failed to participate in good faith,* and failed to make a good faith effort to adhere to the Court's orders." (Emphasis added). The trial court overruled relator's repeated objections to the questions directed to the issue of whether relator mediated in good faith. Allowing this line of inquiry into whether relator complied with a void portion of the order was a clear abuse of discretion.

### Mediation Confidentiality

■ Overruling relator's repeated objections, the trial court also improperly allowed inquiry into matters that were confidential under the ADR Act. Specifically, real party in interest was permitted to inquire as to whether Ms. Mehalko had possession of her cell phone at the mediations, whether and how many times she telephoned her supervisor, and what they discussed. Real party in interest argues that this information was relevant to show that Ms. Mehalko lacked the requisite "full authority" to settle for relator's policy limits as specified by the court's mediation orders. Real party in interest insists that the trial court is entitled to investigate whether relator's representative actually had "full authority" as required by the mediation orders, "to offer to pay policy limits in settlement. . . ."

■ Under section 154.073(a) of the Texas Civil Practice and Remedies Code, communications made by a participant to mediation relating to the subject matter of the dispute are "confidential, [are] not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding." Tex. Civ.Prac. & Rem.Code Ann. § 154.073 (Vernon Supp.2000). Moreover, participants may not be required to testify in any proceedings relating to or arising out of the mediation or be subject to process requiring disclosure of confidential information or data relating to or arising out of the matter in dispute. *Id.* § 154.073(b). Ac-

cordingly, the manner in which participants negotiate should not be disclosed to the trial court. *Davis*, 988 S.W.2d at 375; *see also Williams v. State*, 770 S.W.2d 948, 949 (Tex.App.—Houston [1st Dist.] 1989, no pet.) (holding appellate court could not consider evidence from ADR proceeding because disclosures made during dispute resolution are confidential under ADR Act).

The exceptions to confidentiality are communications or written materials that are admissible or discoverable independently of the ADR proceedings; final written ADR agreements to which a governmental body is a signatory; and information may be submitted *in camera* to the trial court for a determination as to whether it is subject to disclosure if section 154.073 conflicts with other legal disclosure requirements. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 154.073(c), (d) and (e). The trial court here refused relator's offers to submit the requested information at the August 14 hearing for *in camera* determination as to its confidentiality.

Ms. Mehalko testified unequivocally that, if she had deemed it appropriate, she had full authority to settle for the policy limits without consulting her supervisor or the vice president of claims at the time she attended both mediations. This evidence was uncontradicted and satisfied relator's obligation pursuant to the court's mediation orders to have a representative present to negotiate in person, "not by telephone or other remote means" on the occasion of both mediations with full authority to settle for policy limits.

Ms. Mehalko was present as a representative of relator at both mediations and had the requisite full, policy limit authority. Therefore, whether she spoke by telephone with other corporate representatives or officers of relator and what they discussed was absolutely irrelevant

to any appropriate inquiry regarding relator's compliance with the mediation orders and could only have been calculated to acquire confidential information as a fishing expedition for other undisclosed reasons. Because section 154.073 of the ADR Act requires that the manner in which the participants negotiate should not be disclosed to the trial court, the trial court clearly abused its discretion in overruling relator's objections to this line of questioning. *See Davis*, 988 S.W.2d at 375.

Real party in interest also pursued a line of questioning in an effort to establish that Ms. Mehalko did not have authority to pay "policy limits in settlement" because she did not have authority to pay prejudgment interest in addition to policy limits, did not know the amount of prejudgment interest accumulated at the time of the first mediation (prior to trial) or the second (during trial and before judgment), and did not know whether relator would have coverage for prejudgment interest under the policy. The motive for inquiring as to Ms. Mehalko's knowledge of prejudgment interest is puzzling, at best, because the mediation orders only specifically required relator to have present a representative with authority to offer "policy limits" in settlement. Real party in interest has cited no authority that prejudgment interest would be included in policy limits in a settlement either before or after judgment.[2] Therefore, we conclude that Ms. Mehalko's knowledge, or lack thereof, as to coverage for prejudgment interest was likewise irrelevant to any issue regarding compliance with the mediation order.

In addition, real party in interest contends that Ms. Mehalko's calls to her supervisor during the mediation raise a question as to whether she actually had full authority to settle, but there is no record

2. *See Embrey v. Royal Ins. Co. of Am.*, 22 S.W.3d 414, 416 (Tex.2000) (discussing, in dicta, General Casualty Bulletin No. 644, issued in 1984 by the State Board of Insurance, requiring certain insurance, including general liability policies, to include coverage for prejudgment interest under Supplementary Payments, apparently in addition to policy limits).

support for such an inference. Real party in interest also alleges that her credibility is in question because she lied about being a licensed Texas adjuster, but this allegation is completely unsubstantiated. Ms. Mehalko's authority and participation, as well as the fact that substantial offers were made to settle at the mediations, were established by her testimony, which was both uncontradicted and corroborated by affidavits from relator's counsel. Relator was thus shown to have participated in the mediations in compliance with the trial court's orders.

Under these circumstances, any order of sanctions would be void. *Compare Hansen,* 886 S.W.2d at 468 (holding order of sanctions for failure to negotiate in good faith held void where affidavits established defendant and its attorney participated in mediation for several hours until impasse was declared by mediator), *and Davis,* 988 S.W.2d at 375 (ordering assessment of attorney's fees as sanction set aside where party attended mediation and made offer), *with Texas Dep't of Transp. v. Pirtle,* 977 S.W.2d 657, 658 (Tex.App.—Fort Worth 1998, no pet.) (upholding costs and attorney's fees against Department where it admittedly refused to mediate), *and Luxenberg v. Marshall,* 835 S.W.2d 136, 141 (Tex.App.—Dallas, 1992, no writ) (upholding striking of pleadings as sanctions for violation of pre-trial orders including failure to attend mediation). Real party in interest has not explained why further investigation is necessary, or what information is relevant to any issue and not protected by the mediation confidentiality requirements. Because any order of sanctions would be void, any further hearing to further investigate "a possible basis for sanctions" is unnecessary and would be contrary to the confidentiality provisions of the ADR Act.

## CONCLUSION

By orally ordering relator and Ms. Mehalko to appear and give testimony at the August 14 hearing based on no pleading, motion, or show cause order, the trial court clearly abused its discretion by violating relator's rule 21 right to three days' notice of the hearing and its due process right to adequate notice of the charges being investigated against it for sanctions. The trial court further abused its discretion by violating the confidentiality provisions of the ADR Act in requiring relator's representative to testify about the manner in which she negotiated and her communications with other participants and with other representatives of relator during the mediations.

The testimony of Ms. Mehalko established that relator fully complied with the mediation orders by her personal presence and participation in the mediations with full authority to offer policy limits in settlement. By permitting further inquiry into her knowledge of the facts, evidence, and potential damages of the underlying case and her knowledge of the coverage status of prejudgment interest, the trial court's investigation exceeded the scope of the mediation orders, and was not relevant to the issue of relator's participation in mediation. The trial court abused its discretion in permitting inquiry as to whether relator negotiated in good faith because its own order was void to the extent that it included that requirement. Finally, the trial court abused its discretion in concluding from irrelevant and impermissible information elicited from relator's representative that additional investigation should be conducted from still another representative of relator as to the scope of Ms. Mehalko's authority.

We conditionally grant the writ of mandamus and order that the August 14 hearing is void. We order Judge Enlow to (1) strike the record from the August 14 hearing and order that it not be disseminated or used for any purpose in any proceeding, other than information necessary to establish that relator participated in the mediations and made substantial settlement offers and (2) order all parties and their attorneys and representatives in cause

numbers 141–181263–99 and 141–170634–97 to disregard and not to testify regarding the testimony at the hearing of August 14, 2000. The writ will issue only if Judge Enlow fails do either (1) or (2). We note that, because the motion for sanctions has been struck by this court and the trial court previously ordered to set aside the hearing previously scheduled for August 25, 2000, as well as the hearing on that motion set for October 6, 2000, it is unnecessary to issue further direction or order to Judge Enlow regarding any future hearings concerning the mediations. We are confident that the trial court will conduct further proceedings, if any, in accordance with this opinion.