**In re Daniel J. ROWE.**

**No. 03–03–00365–CV.**

Court of Appeals of Texas, Austin.

July 23, 2003.

---

1. See generally WILLIAM V. DORSANEO, III ET AL., TEXAS LITIGATION GUIDE § 31.21(5) (2002).

George T. Dunn, Lockhart, for Fitzpatrick.

Mark E. Cusack, Law Office of Mark E. Cusack, San Marcos, for Rowe.

Before Chief Justice LAW, Justices B.A. SMITH and PURYEAR.

## OPINION

BEA ANN SMITH, Justice.

In this original proceeding, relator Daniel J. Rowe seeks a writ of habeas corpus, arguing he is illegally restrained of his liberty by virtue of an order holding Rowe in contempt and for commitment issued by the district court. We grant Rowe's writ of habeas corpus.

## BACKGROUND

The facts precipitating Rowe's commitment are undisputed. Rowe and his wife at the time, Tina Marie Fitzpatrick, had a son born in June 1992. J.E.R. was diagnosed with autism and had other special needs. Rowe and Fitzpatrick divorced in April 1994, in Caldwell County. The divorce decree did not name either party as a conservator, but it included a possession schedule for Rowe, which was later modified to standard visitation. Rowe was also ordered to pay as child support $300 every month for one year beginning on April 1, 1994. Thereafter, he was to pay $200 per month. He was also ordered to provide health insurance for J.E.R.

Sometime after the divorce, Fitzpatrick moved to Kansas with J.E.R. Although Rowe remained in the Central Texas area, he moved around frequently. Between the years 1996 and 2002, Rowe had lived in Maxwell, Round Rock, Austin, Bastrop, and McCamey. He did not consistently inform Fitzpatrick of these address changes as required by the divorce decree, and in fact, testimony from the hearing that resulted in Rowe's confinement revealed that the last address he reported was where he lived in 1997. The testimony from the hearing also indicated that Rowe visited J.E.R. sporadically, most recently in the summer of 2002 and Christmas 2001.

In February 2003, Fitzpatrick died unexpectedly. Following her death, the maternal grandparents, Sandra Sue and David L. Fitzpatrick, took possession of J.E.R. They, too, reside in the Central Texas area. On March 5, the grandparents filed a "Petition in Intervention of Grandparent in Suit Affecting Parent–Child Relationship," by which they sought to be named managing conservators of J.E.R. The grandparents' petition was set for a hearing on March 18. Rowe claims he was never served with the grandparents' petition. He nevertheless appeared at the hearing on March 18 to contest the grandparents' petition.

Sandra Sue Fitzpatrick testified at the hearing. Then Rowe took the stand. During his testimony, Rowe admitted that he had not paid child support since March 1999 and had not provided health insurance for J.E.R. nor paid any of his medical bills. Rowe also admitted that since the divorce, he had changed residences a number of times without notifying his ex-wife of his address changes, as required by the divorce decree. Shortly after hearing this testimony, the district court stopped the hearing and *sua sponte* ordered Rowe be held in contempt for failure to pay child support for the month of February 2003 and for failure to inform Rowe's deceased

ex-wife of a specific change of address within seven days of changing residences. The court ordered Rowe confined to jail for 180 days unless he purged himself of contempt by paying $10,000 for back child support and past medical expenses to the grandparents, who were named as temporary managing conservators of the child.

By his petition for writ of habeas corpus, Rowe maintains that he is being illegally restrained because he was not provided notice of the charges and an opportunity to defend himself.

## DISCUSSION

■■■ An original habeas corpus proceeding is a collateral attack on a contempt judgment. *Ex parte Rohleder,* 424 S.W.2d 891, 892 (Tex.1967). The purpose of a writ of habeas corpus is not to determine the guilt of the contemnor, but only to determine whether he was afforded due process of law or if the order of contempt is void. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979). An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Ex parte Swate,* 922 S.W.2d 122, 124 (Tex.1996); *Ex parte Barnett,* 600 S.W.2d 252, 254 (Tex.1980).

■■■ Contempt proceedings are quasi-criminal in nature, and the contemnor is entitled to procedural due process throughout the proceedings. *Ex parte Brister,* 801 S.W.2d 833, 835 (Tex.1990) (Cook, J., concurring) (citing *Ex parte Johnson,* 654 S.W.2d 415, 420 (Tex.1983)). Among those procedural due process rights is the right to reasonable notice of each alleged contemptuous act. *Id.* The due process requirement is one of "full and complete notification" of the conduct with which the contemnor is charged; the contemnor must be given a reasonable opportunity to meet the charges by defense or explanation. *Id.* (citing *Ex parte Gordon,*

584 S.W.2d 686, 688 (Tex.1979)); *Ex parte Adell,* 769 S.W.2d 521, 522 (Tex.1989). A contempt order rendered without such adequate notification is void. *Adell,* 769 S.W.2d at 522.

It is undisputed that Rowe was not provided *any* notification of the charges against him. The purpose of the hearing that resulted in Rowe's confinement was to consider the grandparents' petition in intervention; there were no pleadings on file seeking enforcement of a prior child support order and no motion for contempt. Thus, he could not have had adequate notification.

■■■ The trial court asserted during the hearing that it was exercising its inherent authority to *sua sponte* punish Rowe; the grandparents raise this argument in their opposition to the writ. Inherent power to punish without prior notice and a meaningful hearing, however, exists only with respect to direct contempt; that is, in response to an action that occurs in the court's presence. *In re Acceptance Ins. Co.,* 33 S.W.3d 443, 449 (Tex.App.-Fort Worth 2000, orig. proceeding). In this case, Rowe was accused of constructive contempt because his alleged violation occurred outside the court's presence. *Id.* Cases involving constructive contempt are afforded more procedural protections than those involving direct contempt. *Id.* "Notice of the charges and an opportunity to defend against them are an alleged contemnor's most fundamental due process right." *Id.* "A constructive contemnor must be given complete notification and a reasonable opportunity to meet the charges by way of defense or explanation." *Ex parte Barlow,* 899 S.W.2d 791, 795 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding). Although a court has all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, *see* Tex. Gov't Code Ann.

§ 21.001(a) (West Supp.2003), that power does not include the power to violate a party's due process rights. *Acceptance Ins. Co.*, 33 S.W.3d at 450.

The trial court and the grandparents also assert that by not objecting to the evidence of contempt, Rowe consented to the trial of the contempt issues. It is clear from the record that when Rowe testified about his failure to pay child support, provide health insurance, and his failure to provide notice of his change of address, he was answering questions relevant to the grandparents' petition in intervention. He could not have known at that time that the trial court had in mind holding him in contempt. Once the trial court's objective became clear, however, Rowe's counsel indeed objected to the trial court's *sua sponte* actions, arguing that his client had not received notice of the contempt allegations. Even if Rowe's counsel had not objected, however, we hold that because Rowe was not provided notice of the contempt allegations, the order of contempt would be void. His failure to object or protest cannot be taken as a waiver of his rights or as consent to trial. *See Barlow*, 899 S.W.2d at 796 (holding contemnor does not have to object to preserve his complaint for review in original proceeding).

## CONCLUSION

We conclude that the district court's contempt ruling is void. Accordingly, we grant the petition for writ of habeas corpus. It is ordered that Rowe be immediately discharged from custody.