ACCEPTED
14-15-00053-CV
FOURTEENTH COURT OF APPEAL
HOUSTON, TEXAS
2/27/2015 12:21:53 PM
CHRISTOPHER PRINI
CLERK

NO. 14-15-00053-CV

IN THE
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
2/27/2015 12:21:53 PM
CHRISTOPHER A. PRINE
Clerk

STANLEY S. FORTSON, INDEPENDENT EXECUTOR OF
THE ESTATE OF EDWIN DENNIS COOK, DECEASED
Relator

VS.

RAY MOGHADDAM,
Real Party in Interest

Original Proceeding
from Harris County Probate Court Number Four
Hon. Christine Butts
Trial Cause No. 406,325-401

RESPONSE TO PETITION FOR WRIT OF MANDAMUS

JASON B. OSTROM
(TBA #24027710)
NICOLE SAIN THORNTON
(TBA #24043901)
ostrommorris, PLLC
6363 Woodway, Suite 300
Houston, Texas 77057
713.863.8891
713.863.1051 (Facsimile)
jason@ostrommorris.com
nicole@ostrommorris.com

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        Issue One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        Issue Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        Issue Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Appendix
        Notice of Clarification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A

INDEX OF AUTHORITIES

CASES

*Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9
(Tex. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19, 20, 22

*Burchfield v. Tanner*, 178 S.W.2d 681
(Tex. 1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cire v. Cummings*, 134 S.W.3d 835
(Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dow Chem. Co. v. Garcia*, 909 S.W.2d 503
(Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ex parte Gibson*, 811 S.W.2d 594
(Tex. Crim. App. 1991, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gutierrez v. Dallas ISD*, 729 S.W.2d 691
(Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hanley v. Hanley*, 813 S.W.2d 511
(Tex. App. — Dallas 1991, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hickman v. Taylor*, 329 U.S. 495
(1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hill & Griffith Co. v. Bryant*, 139 S.W.3d 688
(Tex. App. — Tyler 2004, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Acceptance Ins. Co.*, 33 S.W.3d 443
(Tex. App. — Fort Worth 2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Alford Chevrolet-Geo*, 997 S.W.2d 173
(Tex. 1999)(orig. proceeding) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re CSX Corp.*, 124 S.W.3d 149
(Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Dow Agrosciences, LLC*, 2011 Tex. App. Lexis 723
(Tex. App. — Houston [14[th] Dist.] 2011, orig. proceeding) . . . . . . . . . . . . 9

*In re Houston*, 92 S.W.3d 870
(Tex. App. — Houston [14[th] Dist.] 2002, orig. proceeding) . . . . . . . . . . . 4

*Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916
(Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 14, 23

*K-Mart v. Sanderson*, 937 S.W.2d 429
(Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9, 24

*Loftin v. Martin*, 776 S.W.2d 145
(Tex. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

*Ordonez v. M. W. McCurdy & Co., Inc.*, 984 S.W.2d 264
(Tex. App. — Houston [1[st] Dist.] 1998) . . . . . . . . . . . . . . . . . . . . 20

*United States Fidelity v. Rossa*, 830 S.W.2d 668
(Tex. App. — Waco 1992, writ denied) . . . . . . . . . . . . . . . . . . . . 18

*Wackenhut Corp. v. Gutierrez*, No. 12-0136, 2015 Tex. Lexis 112
(Tex. 2015)(publication status pending) . . . . . . . . . . . . . . . . . . . 21, 22

*Walker v. Packer*, 827 S.W.2d 833
(Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

*Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718
(Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*West v. Solito*, 563 S.W.2d 240
(Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

STATUTES

TEX. R. CIV. PROC. 196.4. .................................. 13

APPENDIX

    Notice of Clarification .................................. A

# I. ISSUES PRESENTED

ISSUE NO. 1:
The trial court overruled some of Relator's overused objections of "fishing expedition, vague, and overly broad" and ordered him to produce responsive documents within certain limited categories. Was the trial court's ruling commensurate with guiding principles of law?

ISSUE NO. 2:
Relator requested production of emails that Real Party in Interest created using a computer that Relator now possesses; Real Party in Interest requested production of electronic and magnetic data potentially housed on that same computer. The trial court entered an order of instruction to control the method by which electronic data was retrieved and disclosed, and directed the parties to split the associated cost. Did the trial court properly exercise its discretion?

ISSUE NO. 3:
Did the trial court appropriately exercise its discretion when it denied Relator's request for a default judgment due to spoliation of evidence?

## II. STANDARD OF REVIEW

A relator who attacks a trial court ruling citing abuse of discretion labors under a heavy burden. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985). Relator must show that the trial court's action was so arbitrary and unreasonable as to amount to a clear prejudicial error of law. *Loftin v. Martin*, 776 S.W. 2d 145, 146 (Tex. 1989). In other words, he must show that no judge could have reasonably made the same rulings that the trial court did. *See Johnson*, 700 S.W.2d at 917.

In evaluating the trial court's rulings, this Court cannot substitute its judgment for that of the trial court, nor can it disturb a trial court decision that is based upon a fact issue unless that decision is arbitrary and unreasonable. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992).

## III. SUMMARY OF THE ARGUMENT

Relator did not meet his burden to show that the trial court's actions in overruling his voluminous and obfuscating objections and compelling production was so arbitrary and unreasonable so as to amount to a clear and prejudicial error of law. The trial court's ruling was directly in line with Texas Supreme Court case *K-Mart v. Sanderson*, 937 S.W.2d 429 (Tex. 1996). The trial court's judgment was neither

-2-

erroneous nor arbitrary and unreasonable, and therefore was not an abuse of discretion.

Relator has also failed to show how the trial court abused its discretion in ordering the parties to share in the cost of submitting the decedent's computer to a forensic expert for the retrieval of documents responsive to the requests for production that each party propounded. The trial court's actions were in line with Texas Rule of Civil Procedure 196.4.

Finally, the trial court's refusal to enter a spoliation order striking Real Party in Interest's pleadings and granting a default judgment was neither arbitrary nor unreasonable; it was an appropriate application of the standards enunciated by the Texas Supreme Court in *Brookshire Bros.*, based upon the facts and circumstances of this case. Relator had not shown otherwise.

## IV. STATEMENT OF FACTS

Edwin Dennis Cook ("Decedent") died on July 10, 2011, and less than a month later the trial court appointed an Independent Executor of his Estate. (Tab 5). The Independent Executor immediately inventoried the Decedent's safe and made a video recording of the contents. (Tab 5). The Independent Executor elected not to take possession of the coins in the safe that have become the issue in the underlying suit

(the "Coins"), and instead left them there until April 2012.[1] (Tab 5). Four months after collecting the Coins, the Executor filed suit against Real Party in Interest asserting various causes of action premised upon the allegation that Real Party in Interest stole some of the Coins.

In December 2012, the Executor served discovery upon Real Party in Interest who returned his responses to his attorney, Jeff Crews, within 30 days. (Tab 1(a)(ii)). Mr. Crews timely served responses to requests for admissions, but absolutely failed to serve responses to interrogatories or requests for production despite possessing Real Party in Interest's answers. (Tab 1(a)(ii)). He thereafter failed to respond to the Executor's Motion to Compel Discovery, and failed to attend the hearing thereon, which resulted in the entry of an order compelling the responses and imposing sanctions including the waiver of all objections. (Tab 1(a)(ii)). Real Party in Interest did not know about this Motion or Order. (Tab 1(a)(i) 70:18-71:16; 76:5-16).

Mr. Crews's failures were compounded by the Executor's failure in connection with its Motion for Contempt: a failure to serve citation on Real Party in Interest as is required by law.[2] (Tab 1(a)(ii)). Despite depriving Real Party in Interest of his

---

[1] Real Party in Interest disputes the assertion that there was a discrepancy in the number of coins maintained in the safe by the Decedent at the time of his death and the number of coins that the Independent Executor took possession of in April 2012.

[2] Due process requires that full and unambiguous notice of an accusation of contempt be served on the alleged contemnor in a motion for contempt, show cause order, or equivalent legal

-4-

right to know that his attorney was failing to do his job and depriving Real Party in Interest of his right to protect his legal interests, the Executor moved forward on its contempt action and succeeded in having all of Real Party in Interest's pleadings stricken – without the existence of any answer or argument to the contrary. (Tab 7).

Mr. Crews managed to remain unaware of the Contempt Order, and ultimately served Real Party in Interest's Responses to Interrogatories and Responses to Requests for Production in May of 2013, using the information that Real Party in Interest had timely provided in January of that year. (Tab 1(a)(ii)).

The combined failures of Mr. Crews and the Executor relating to discovery and citation ultimately led to the entry of a default judgment against Real Party in Interest. (Tab 8). Real Party in Interest hired new counsel to represent him in seeking a new trial, and eventually the death penalty sanctions and default judgment were set aside. (Tab 9). Relator's contempt motion was reheard, and discovery sanctions were entered against Real Party in Interest and Jeff Crews. (Tab 10). Real Party in Interest has since fully answered all of the discovery served upon him by producing all documents within his custody and control. (Tab 1(a)(iii)).

---

process stating how, when, and by what means the party has been guilty of the alleged contempt. *In re Acceptance Ins. Co.*, 33 S.W.3d 443, 448 (Tex. App. — Fort Worth 2000, no pet.)(citing *Cadle Co. v. Lobingier*, 34 S.W.3d 598, 2000 Tex. App. LEXIS 6737, 2000 WL 797442, *1 (Tex. App. — Fort Worth October 5, 2000, no pet. h.); *Ex parte Chambers*, 898 S.W.2d 257, 262 (Tex. 1995)); *see also In re Houston*, 92 S.W.3d 870, 876 (Tex. App. — Houston [14th Dist.] 2002, orig. proceeding).

Real Party in Interest served discovery upon Relator who responded with so many objections as to make his responses useless. (Tab 2(a)(ii)). Real Party in Interest filed a Motion to Compel which was granted in part (Tab 2); Relator now complains that the trial court abused its discretion in ordering the production of certain categories of documents.

Real Party in Interest also filed a Motion for Instruction after no agreement could be reached between he and Relator regarding how electronic information responsive to discovery requests propounded by both parties should be removed from the Decedent's computer. (Tab 3(a)). The trial court entered an order directing how the information was to be retrieved and distributed, and dividing the cost equally between the parties. (Tab 3). The trial court reserved the right to reassess cost. (Tab 3). Relator claims this was an abuse of discretion.

Relator filed a Motion for Discovery Abuse Sanctions: Spoliation, asking the trial court to strike Real Party in Interest's pleadings, to enter a default judgment against him, and to levy additional monetary sanctions against him. (Tab 1). The trial court, with the benefit of having heard live testimony from Real Party in Interest regarding his actions and intentions denied the requested relief. Relator complains that the trial court abused its discretion by not issuing death penalty sanctions for the same discovery disputes it had already adjudicated.

## V. Arguments and Authorities

Issue No. 1:

The trial court overruled some of Relator's overused objections of "fishing expedition, vague, and overly broad" and ordered him to produce responsive documents within certain limited categories. Was the trial court's ruling commensurate with guiding principles of law?

In order to be entitled to mandamus relief on this issue, Relator bears the burden of showing that the trial court acted without regard to accepted legal principles – that its rulings were so arbitrary and unreasonable that no other court could have reached the same determination. *See Johnson*, 700 S.W.2d at 917. Relator did not meet this burden.

Relator cites only to *Loftin v. Martin* in support of his assertion that the Requests for Production propounded by Real Party in Interest were vague and an overly broad fishing expedition. *See* Petition at p. 19. *Loftin*, however, does not establish that the trial court acted without regard to controlling law, nor that the Requests at issue were overly broad or a fishing expedition. A request is "overbroad" if it encompasses time periods, products, or activities beyond those at issue in the case, and therefore not reasonably tailored to include only relevant matters. *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999)(original proceeding). A "fishing expedition" is exemplified by requests for information that are not reasonably tailored as to time, place, or subject matter. *In re CSX Corp.*, 124 S.W.3d

-7-

149, 152 (Tex. 2003). Requests of these nature are impermissible, hence the *Loftin* decision that a general request for all documents that supported a claimant's allegations was impermissible. *Loftin*, 776 S.W.2d at 148. The *Loftin* court found that the request did not identify "any particular class or type of documents." *Id.*

By contrast, the requests at issue in this case sought specific classes of documents – not generically "documents supporting Relator's allegations" without further limitation. (Tab 2(a)(ii)). Real Party in Interest sought documents directly relating to the Coins made the subject of Relator's suit: the Decedent's receipt of them, the Decedent's transport of them, Real Party in Interest's alleged theft of them, and the like. (Tab 2(a)(ii)). After its *Loftin* decision, the Texas Supreme Court definitively ruled that requests for documents in articulated categories are permissible.

In *K-Mart Corp. v. Sanderson*, the Texas Supreme Court analyzed a request for all documents which related to, touched, or concerned the allegations of the lawsuit, and all documents reflecting the incident made the basis of the suit. 937 S.W.2d at 430. The defendant objected that the requests were overly broad and would require it to turn over its entire file, and cited to *Loftin* just as Relator has done. *Id.* The Court affirmed the trial court's production order, finding that the request for *all documents* related to a specific incident and that a reasonable person could

-8-

understand from the request what documents were responsive. *Id.* at 430-31.

The trial court's ruling was appropriate under *K-Mart*, especially in light of the fact that Real Party in Interest's requests were more specific than the ones considered by the Texas Supreme Court. The ruling is also consistent with this Court's decision in *In re Dow Agrosciences, LLC*, wherein requests for *all documents* in various categories were only limited by this Court to exclude patents not defined within the parties' settlement and license agreements; the requests were not characterized as overbroad or a fishing expedition simply because they sought *all documents* within specified categories. 2011 Tex. App. Lexis 723 (Tex. App. — Houston [14[th] Dist.] 2011, orig. proceeding).

There cannot be – and in fact has not been – any argument that Relator is not able to determine what documents are responsive or that the categories of documents sought are not related to the causes of action plead. Relator only argues that he would somehow be required to allow Real Party in Interest to peruse his entire evidence file. *See* Petition at p. 20. This rather dramatic argument reveals Relator's true motivation: he does not want to produce documents that evidence his claim – or potentially reveal that he has none. The United States Supreme Court, however, has made clear that a party cannot hide behind objections to avoid producing evidence. It held in *Hickman v. Taylor* that discovery rules are to be accorded liberal treatment. 329 U.S. 495, 507

(1947). A party cannot cry "fishing expedition" to preclude a party from inquiring into the facts underlying his opponent's case. *Id.* In Texas, discovery requests are to be viewed with a liberal spirit. *Hill & Griffith Co. v. Bryant*, 139 S.W.3d 688, 698 (Tex. App. — Tyler 2004, pet. denied). This liberal spirit is commensurate with the stated purpose of discovery in Texas: to allow the parties to obtain full knowledge of the issues and facts before trial. *West v. Solito*, 563 S.W.2d 240, 243 (Tex. 1978). The objective of discovery is to prevent trial by ambush. *Gutierrez v. Dallas ISD*, 729 S.W.2d 691, 693 (Tex. 1987).

Relator now asks this Court to undermine the trial court's ruling in order to allow him to engage in a trial by ambush - irrespective of the laws promulgated by the Supreme Courts of both the United States and Texas. If one followed Relator's logic, Real Party in Interest would have to somehow intuit precisely what documents exist in support of Relator's claim and ask for them by name. This, despite the fact that Real Party in Interest is innocent of the charges levied against him and has no idea what documents Relator might rely on. If Relator has evidentiary support for his claims, he will undoubtedly use it at trial; Real Party in Interest is entitled to discover that proof before the trial.

Moreover, Real Party in Interest would have to ensure that he used the same label for the document that Relator employs to ensure turnover; that fact is

exemplified by the fight over Request for Production 23. Real Party in Interest requested "the Decedent's personal calendar, appointment book, or other records that demonstrate where the Decedent was on any given day during the year 2011." (Tab 2(a)(ii)). Relator objected as "irrelevant, overly broad, vague and not reasonably calculated to the discovery of admissible evidence" and a fishing expedition that would require him to produce "a soil sample from [the Decedent's] shoe or anything else the imagination can conjure." (Tab 2(a)(ii)). Real Party in Interest included the phrase "other records" to guard against a linguistic fight – what he might call a calendar, Relator might call a day-planner, or something unknown to Real Party in Interest. (Tab 2(a)). This concern was well-founded; Relator's twisting that into a request for a "soil sample" reveals his obfuscating and demonstrates the need for the word "documents" in Real Party in Interest's requests. Focusing on the category of documents needed - as permitted by the Texas Supreme Court in *K-Mart* – guards against the nitpicking and avoiding in which Relator engages.

The trial court's production order does nothing more than allow Real Party in Interest to obtain information about the claims against him. It is appropriate under *West*, *Gutierrez*, and *K-Mart*, and does not constitute a ruling that is so far afield from abiding rules of law that it amounts to abuse of discretion.

ISSUE NO. 2:

Relator requested production of emails that Real Party in Interest created using a computer that Relator now possesses; Real Party in Interest requested production of electronic and magnetic data potentially housed on that same computer. The trial court entered an order of instruction to control the method by which electronic data was retrieved and disclosed, and directed the parties to split the associated cost. Did the trial court properly exercise its discretion?

Relator requested that Real Party in Interest produce "the complete email contents of the Inbox, sent items, deleted items (or trash folder)" for any email account owned by Real Party in Interest from January 1, 2010 forward. (Tab 1(a)(i) 32:2-7). Despite the fact that this discovery request was not tailored narrowly to only seek emails that would be relevant to the purported theft that occurred between August 2011 and April 2012, Real Party in Interest was forced to respond in full because his attorney's negligence resulted in the waiver of his objections. (Tab 10). Real Party in Interest had used the Decedent's computer to generate emails because it was in the house he shared with Decedent (who was still alive in 2010) and because it gave him the ability to attach scanned documents to his emails. (Tab 1(a)(i) 29:1-4). Relator took possession of that computer, which precludes Real Party in Interest from taking any unilateral action to obtain the emails from Outlook. (Tab 7).

Admittedly, Real Party in Interest deleted the emails from Outlook because they contained sensitive banking information, and thus they must be retrieved from

the hard-drive by a forensic expert, but the issue of *where* on the computer the data is stored is distinct from the issue of *how* data from a computer in Relator's exclusive possession should be obtained, authenticated, and produced. "How" would be an issue irrespective of whether Real Party in Interest's emails were maintained in Outlook, moved to the trash folder, housed in advertised folders on the desktop, or hidden away in a password-protected file. "How" is also an issue with respect to any documents responsive to the Requests for Production propounded by Real Party in Interest; the same forensic examiner is the appropriate person to obtain and authenticate that electronic data.

The trial court's order effectuates a method by which any data responsive to both parties' Requests for Production can be obtained and disseminated and the authenticity of that data verified. (Tab 3). Relator takes issue with the trial court's order that the parties split the cost – an order subjected to a reservation allowing the trial court the ability to reassess the cost later in the proceeding. (Tab 3). The trial court's order is commensurate with Texas Rule of Civil Procedure 196.4, which taxes the cost of extraordinary measures to obtain data against the party requesting the data. TEX. R. CIV. PROC. 196.4. Relator has requested emails that Real Party in Interest generated on the computer that Relator has possession of; he will not give Real Party in Interest access to the computer, so extraordinary measures are necessary to obtain

the requested data. Texas Rule of Civil Procedure 196.4 taxes him with the cost of those extraordinary measures. Similarly, Real Party in Interest has sought documents on the computer and after Relator gave no indication that he would produce any responsive documents maintained electronically, the trial court provided a framework by which that data could be obtained, and taxed Real Party in Interest with the cost.

The trial court acted in accord with Texas Rule of Civil Procedure 196.4, and with the demands of logic. Relator has not met his burden to show that no other judge could reasonably conclude that the trial court's ruling made sense. *See Johnson*, 700 S.W.2d at 917. He has offered absolutely no case law to demonstrate that the trial court's ruling was arbitrary, and instead premises his argument on what he *suspects* Real Party in Interest would have retrieved from the Decedent's computer had he been given the right to physically inspect the same. Petition at p. 23. *Suspicions* are not an appropriate legal basis on which to seek mandamus relief, especially when no part of the trial record supports the idea that Real Party in Interest requested access to the computer to obtain his own "personal information." Petition at p. 23.

Nor are invented facts an appropriate basis; Relator advises this Court that Real Party in Interest deleted the Decedent's information from the computer, but fails to cite to the record for evidence of that. Petition at p. 23. Real Party in Interest

-14-

testified <u>only</u> to deleting emails he created and to deleting the Decedent's junk mail for space concerns – an action Relator's attorney seemed to sanction. (Tab 1(a)(i) 33:20-35:16). Relator has misrepresented that testimony to this Court through his argument that documents responsive to Real Party in Interest's discovery cannot be retrieved "due to defendant's actions in deleting the information." *See* Petition at p. 24. His misrepresentations do not entitle him to mandamus relief, nor do fabricated reasons that did not form the basis for the trial court's ruling like "recovery of personal information." Mandamus only issues when there is a clear right; if that right is premised upon facts that are doubtful or disputed, mandamus cannot issue. *See Dow Chem. Co. v. Garcia*, 909 S.W.2d 503, 505 (Tex. 1995). No mandamus is appropriate on this issue.

<u>ISSUE NO. 3</u>:
> Did the trial court appropriately exercise its discretion when it denied Relator's request for a default judgment due to spoliation of evidence?

Relator complains that the trial court denied his *Motion for Discovery Abuse Sanctions: Spoliation*. This Court must review that ruling under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). Relator thus must establish that the trial court's decision not to (a) strike Real Party in Interest's pleadings, (b) enter a default judgment against Real Party in Interest, and (c) award monetary sanctions, deviated so far from the standards promulgated in

*Brookshire Bros.*, that no other court could have reached the same determination. (Tab 1(a)); *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9 (Tex. 2014). Relator has not even come close to carrying that heavy burden.

Specific intent is a requisite for a spoliation finding. *See Brookshire Bros.*, 438 S.W.3d at 14. Although he repeatedly uses the word "intentional" to describe Real Party in Interest's deletion of email, he cites to no evidence that demonstrates that Real Party in Interest deleted emails with the specific intent of concealing discoverable evidence. *See* Petition at p. 13; *Brookshire Bros., Ltd.*, 438 S.W.3d at 14. Without evidence of this requisite "specific intent" Relator's argument that the trial court deviated from law absolutely fails. *Id.*

In *Brookshire Bros.*, the Texas Supreme Court clarified the standards governing whether an act of spoliation has occurred and the parameters of a trial court's discretion to impose a remedy. *Id.* To conclude that a party spoliated evidence, the court must find that (1) the spoliating party had a duty to reasonably preserve evidence, and (2) the party intentionally or negligently breached that duty by failing to do so. *Id.*

*No Duty to Preserve*

Relator bore the burden of establishing that Real Party in Interest had a duty to preserve the full contents of his email, for a period beginning two years before suit

-16-

was filed and going forward. *Brookshire Bros.*, 438 S.W.3d at 20; (Tab 1(a)(i) 32:2-7; Tab 5). Such a duty arises "only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." *Id.* It is an absolute requisite that the accused knew or should have known that the evidence would be relevant and material to the claim at issue. *Id.* Relator thus bore the burden of showing that:

- Real Party in Interest knew that Relator would sue him; and

- knew that his personal emails[3] would be material and relevant to the claims against him.

The record contains absolutely no indication, much less evidentiary proof, that Real Party in Interest had any inkling that Relator would sue him. It is also bereft of evidence or testimony that Real Party in Interest knew that his personal emails, including those written years before the purported theft, could be material and relevant to trumped up claims that would be brought years later. Realtor offered no evidence to the trial court to demonstrate that the lost emails are either material or

---

[3]Relator expands the scope of his Petition for Mandamus to include "financial records" but his Motion for Spoliation only addressed emails. (Tab 1(a)). Real Party in Interest has produced all of his bank records in compliance with Relator's requests for production. (Tab 1(a)(iii)); Appendix A.

relevant to his claims. (Tab 1(a)). Relator currently offers this Court no evidence that the lost emails are material or relevant. *See* Petition at p. 15.

He instead attempts to offend this Court's sensibilities by insinuating that Real Party in Interest has destroyed financial records – a falsity, and one not part of his *Motion for Discovery Sanctions: Spoliation*. (Tab 1(a)). It has been routinely stated that "courts 'must be on guard against confusing offenses to their sensibilities with obstruction of the administration of justice.'" *Ex parte Gibson*, 811 S.W.2d 594, 596 (Tex. Crim. App. 1991, no writ) (quoting *Brown v. United States*, 356 U.S. 148, 153 (1958)). To this end, courts must resolve all doubts in favor of reaching a trial on the actual merits of the case. *Hanley v. Hanley*, 813 S.W.2d 511, 518 (Tex. App. — Dallas 1991, no pet.); *United States Fidelity v. Rossa*, 830 S.W.2d 668, 671 (Tex. App. — Waco 1992, writ denied). Relator also asks this Court to assume that Real Party in Interest's "communications" are both "material and relevant" to his claims. Petition at p. 15. Assumptions are not facts, and a trial court's refusal to enter sanctions based on assumptions does not amount to an abuse of discretion.

This Court may affirm the trial court's ruling on this prong of the test alone; there can be no spoliation finding without proof that Real Party in Interest knew that the emails would be material and relevant to a claim that he did not and could not have known would be brought against him.

## Breach of Duty

The trial court's ruling can also be affirmed on the basis that Relator did not meet his burden of proving that Real Party in Interest *intentionally* breached his duty. *Brookshire Bros.*, 438 S.W.3d at 20. (The party seeking a remedy for spoliation must demonstrate that the other party breached its duty to preserve material and relevant evidence.). A party must intentionally spoliate evidence in order for a spoliation instruction to constitute an appropriate remedy. *Id.* at 23. Thus, Relator was required to prove that Real Party in Interest acted with an "intent to conceal or destroy discoverable evidence." *Id.*

While being examined by Relator's counsel, Real Party in Interest admitted to deleting emails from his web-based mail program as a matter of course, testifying that he had done so for years. (Tab 1(a)(i)32:12-22). The trial court is the judge of his credibility, and this Court cannot substitute its judgment. *Burchfield v. Tanner*, 178 S.W.2d 681 (Tex. 1944). Nor should this Court be mislead by Relator's rendition of the testimony; Real Party in Interest admitted to deleting emails from the Decedent's computer that contained his personal banking information because he did not trust Relator's counsel, who ultimately took possession of that computer. (Tab 1(a)(ii)33:2-5). His testimony dispels the idea that the destruction was done to "conceal or

destroy discoverable evidence," instead demonstrating that Real Party in Interest's true concern was to protect his banking information from persons he did not trust. The actions may have been ill-advised, but bad decisions are not evidence of the specific *mens rea* called for by *Brookshire Bros*. That evidence is absent from the record.

Refusal of a spoliation instruction without proof of intent is appropriate under *Ordonez v. M. W. McCurdy & Co., Inc.*, 984 S.W.2d 264 (Tex. App. — Houston [1st Dist.] 1998). There the defendant driver testified that he threw away his log book, despite potentially being on notice about the claim, and the plaintiff argued that he "intentionally destroyed" the same to avoid its discovery. *Id.* at 273-74. Evidence showed that it was the normal course of business for the defendant to keep log books for a period of six months. *Id.* There was no evidence in that case that the log books were destroyed for the purpose of concealing them from the plaintiff. *Id.* The trial court did not err in refusing a spoliation instruction. *Id.* Despite Relator's assertion to the contrary, a finding by the trial court that the requisite intent was absent is not "unreasonable" – it is in line with *Ordonez*. It is also a factual finding not to be disturbed via mandamus. *See Walker*, 827 S.W.2d 839.

The only way that Relator could have avoided establishing that Real Party in Interest acted with this specific nefarious intent would have been through a showing

that Relator was deprived of any meaningful opportunity to present his case. *Brookshire Bros.*, 438 S.W.3d at 25. Relator did not offer such proof at the trial court level. To the contrary – he offered as evidence at the contempt hearing the very emails that Real Party in Interest had created on the Decedent's computer after scavenging from the computer hard-drive. (Tab 1(a)(ii)). The only thing that would prevent Relator from presenting those recovered emails at trial in support of his claims is their abject irrelevance. Moreover, the trial court was well within its discretion to determine that Relator's access to Real Party in Interest's bank records, testimony, and whatever evidence it maintains in its so-called "evidence file" will allow Relator to put on his case in chief. *See* Petition at p. 20 (reference to evidence file).

One certainly would hope that Relator did not file suit against Real Party in Interest with *no evidence* of wrongdoing and only the *hope* of finding proof of wrongdoing in his emails; that would be the very definition of a prohibited fishing expedition. For the trial court to give Relator the benefit of the doubt as to the existence of other evidence is generous – hardly grounds for the mandamus that Relator seeks. It is, instead, in line with the Texas Supreme Court's decision in *Wackenhut Corp. v. Gutierrez*, wherein the defendant allowed a video tape that may have recorded the accident to be destroyed. No. 12-0136, 2015 Tex. Lexis 112 (Tex.

-21-

2015) (publication status pending). The Texas Supreme Court found that because the plaintiff had other evidence available to him he was not "irreparably deprived of any meaningful ability to present his claim." *Id.* at *11. A spoliation instruction was not appropriate. *Id.* It is similarly not appropriate in this case; the trial court ruled correctly.

Even if the trial court had found an intentional spoliation of relevant evidence, Relator did not show at trial and has not addressed with this Court the other issues which must be considered in a spoliation ruling, including:

- the relevance of the evidence to key issues;

- harmfulness or helpfulness of the evidence; and

- whether the evidence is cumulative of other competent evidence that may be used instead of the destroyed evidence.

*Brookshire Bros., Ltd.,* 438 S.W.3d at 22-23. Without evidence addressing these points, the trial court correctly denied the spoliation motion; without evidence addressing these points, Relator has failed to show he is entitled to mandamus relief.

Finally, at both the trial court level and in his mandamus action, Relator has failed to evidence his entitlement to a spoliation order (a) striking Real Party in Interest's pleadings; (b) instituting a default judgment against him; and (c) awarding additional monetary sanctions against him. (Tab 1(a)). Certainly *Brookshire Bros.,*

-22-

does not authorize the entry of a default judgment for a spoliation issue; in fact it characterizes a spoliation instruction as a "harsh" remedy and cautions against the impact the instruction can have on the fundamental fairness of a trial. *Id.* at 17. Remedies for spoliation are supposed to be designed to "restore the parties to a rough approximation of their positions if all evidence were available." *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003). None of the remedies solicited by Relator in his spoliation motion would have restored the parties to the positions they occupied if Real Party in Interest's emails still existed. Had he produced emails from 2010 (prior to the Decedent's death and prior to the purported theft) Relator would have been possessed of some irrelevant documents – not a default judgment. Relator sought relief far in excess of a restoration of the status quo, and the trial court did not abuse its discretion in denying it.

## VI. CONCLUSION

The Texas Supreme Court has spoken to almost all the issues raised in this Petition for Mandamus. First, with respect to the mandamus itself, the Court has said that a relator who attacks a ruling for an abuse of discretion labors under a heavy burden and must establish that the facts and law only permit one decision. *Johnson*, 700 S.W.2d 917. Under this standard, Relator was required to prove the arbitrariness and unreasonableness of the trial court's actions with respect to his three mandamus

points. In *K-Mart Corp.*, the Court opined that asking for *all documents* within a certain category was acceptable and did not amount to a demand that the respondent turn over his entire file since a reasonable person would be able to read the request and determine what was responsive. *K-Mart Corp.*, 937 S.W.2d at 430. The trial court's actions were appropriate under this standard. Though the Texas Supreme Court has not addressed the allocation of costs under Texas Rule of Civil Procedure 196.4, the statute is clear and the trial court's balancing of costs against both parties who seek electronic data from the same computer, coupled with its reservation to reassess cost, demonstrate compliance with the controlling law. Finally, there is the issue of spoliation about which the Texas Supreme Court has recently spoken at length. The trial court's decision not to grant Relator's *Motion for Discovery Abuse Sanctions: Spoliation*, which sought relief far in excess of a restoration of the status quo, was appropriate under *Brookshire Bros.*, *Wal-Mart Stores, Inc.*, and *Wackenhut.*

Direct legal authority not only authorized the trial court's conclusions, but mandated them; there was no abuse of discretion in the rulings about which Relator complains, and mandamus should not issue.

WHEREFORE, PREMISES CONSIDERED, Real Party in Interest, Ray Moghaddam, asks the Court to deny Relator's Petition for Writ of Mandamus, award

him fees and costs, and grant him such other and further relief to which he may show himself entitled.

Respectfully submitted,

ostrommorris, PLLC

BY: _____

JASON B. OSTROM
(TBA #24027710)
NICOLE SAIN THORNTON
(TBA #24043901)
6363 Woodway, Suite 300
Houston, Texas 77057
713.863.8891
713.863.1051 (Facsimile)
jason@ostrommorris.com
nicole@ostrommorris.com

Attorneys for Real Party in Interest,
Ray Moghaddam

CERTIFICATE OF COMPLIANCE

I certify that the Response to Petition for Writ of Mandamus was created on a computer and contains 5,752 words.

_____
Jason B. Ostrom

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing forwarded in compliance with the Texas Rules of Appellate Procedure on the 27th day of February 2015 to:

Mr. Micah Fortson, III
2702 Jackson Street
Houston, Texas 77004
713.533.1520
713.533.1571 (Facsimile)

Mr. Jeffrey Crews
1314 Texas Ave., Suite 1120
Houston, Texas 77002
713.228.2100
713.228.2101 (Facsimile)

Jason B. Ostrom
Nicole Sain Thornton

# APPENDIX

Notice of Clarification ........................................ A

FILED
2/19/2015 5:35:41 PM
Stan Stanart
County Clerk
Harris County

**PROBATE COURT 4**

CAUSE No. 406,325-401

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| EDWIN DENNIS COOK, | § | NUMBER FOUR (4) OF |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## NOTICE OF CLARIFYING AFFIDAVIT

TO THE HONORABLE COURT:

PLEASE TAKE NOTICE that the Affidavit of Raham Moghaddam clarifying testimony he gave on July 10, 2014, attached hereto as Exhibit A, is being filed in accordance with the Texas Rules of Civil Procedure.

Respectfully submitted,

ostrommorris, PLLC

BY:
JASON B. OSTROM
(TBA #24027710)
jason@ostrommorris.com
R. KEITH MORRIS, III
(TBA #24032879)
keith@ostrommorris.com
6363 Woodway, Suite 300
Houston, Texas 77057
713.863.8891
713.863.1051 (Facsimile)

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/24/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Consuelo Arroyo



I do hereby certify that a true and correct copy of the foregoing was served in accordance with Rules 21 and 21 on the ___14___ day of ___Febry___ 2015 to:

Mr. Micah Fortson, III
2702 Jackson Street
Houston, Texas 77004
713.533.1520
713.533.1571 (Facsimile)

Mr. Jeffrey Crews
1314 Texas Ave., Suite 1120
Houston, Texas 77002
713.228.2100
713.228.2101 (Facsimile)

Jason B. Ostrom
Nicole Sain Thornton

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/24/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Consuelo Arroyo



STATE OF TEXAS      §
                    §
COUNTY OF HARRIS    §

## AFFIDAVIT OF RAHMAN MOGHADDAM

Came on Rahman Moghaddam who being duly sworn by me, on his oath deposed as follows:

My name is Raham Moghaddam. I am over the age of 18 years, of sound mind, capable of making this affidavit, and personally acquainted with the facts stated herein which are true and correct.

On July 10, 2014, I testified in Harris County Probate Court Number Four in connection with the Estate of Edwin Dennis Cook, Deceased. While being examined by Micah Fortson, I testified I did not leave any bank accounts out of my answer to Interrogatory Number One at the time I answered it. I did not include any Iranian bank accounts in my answer to Interrogatory Number One nor in my live recitation of bank accounts because I do not own any Iranian bank accounts.

Later in questioning, I testified to making wire transfers from my bank account to the bank account of another individual within the United States. These transfers were done with the agreement that a similar transaction would occur in Iran with Iranian Toman, and that no United States Dollars would ever leave the United States. This testimony has been construed as meaning that Toman would be deposited in my bank account in Iran. That is not correct; I do not have a bank account in Iran. The deposit in Iran was made into an account owned by my brother-in-law who uses the monies to provide for my elderly mother's medical care and housing.

Any testimony that I have an account in Iran is not accurate and I believe lack of clarity is a result of the fact that English is not my first language.

Further Affiant Sayeth Not.



RAHMAN MOGHADDAM

SWORN TO and SUBSCRIBED before me, the undersigned authority on this 17th day of February, 2015.

_____
Notary Public in and for the State of Texas

MARIO VALENZUELA
Notary Public, State of Texas
My Commission Expires
February 25, 2018

**EXHIBIT**
**A**

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2/24/2015
**Stan Stanart, County Clerk**
Harris County, Texas

_____ Deputy
Consuelo Arroyo

